**Timothy SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–95–00345–CR.**

Court of Appeals of Texas, Austin.

May 22, 1997.

---

James B. Matthews, Austin, for appellant.

Ronald Earle, District Attorney, C. Bryan Case, Jr., Assistant District Attorney, Austin, for appellee.

Before CARROLL, C.J., and B.A. SMITH and DALLY, JJ. *

DALLY, Justice (Retired).

Appellant Timothy Scott appeals from his conviction for the offense of aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03 (West 1994). Appellant's punishment was assessed by the trial court at imprisonment for twenty years. In his first point, appellant asserts that the evidence does not support the jury's verdict. We agree and will reverse the judgment of the trial court.

■ Appellant and three codefendants were charged with the offenses of attempted capital murder and aggravated robbery. All were tried together before the same jury. The charge of attempted capital murder was abandoned and the jury was charged only on the offense of aggravated robbery. The jury acquitted Christopher Whitman and convicted Cornell Loving, Andre Webb, and appellant of the offense of aggravated robbery. The evidence shows appellant drove the car in which the defendants left the scene of the crime. The State acknowledges that appellant could be convicted of the offense of aggravated robbery only as a party. The trial court instructed the jury on the law of parties. Then, with the State's acquiescence, the court instructed the jury that before it could find the appellant guilty it must find beyond a reasonable doubt that appellant entered into an agreement and a conspiracy with the codefendants to commit the offense of robbery, that one or more of the codefendants committed the robbery, and after the codefendants committed the robbery, appellant pursuant to the prior agreement "aided as a party by driving the getaway car ... and that such offense was committed in the furtherance of the unlawful purpose to commit robbery." The sufficiency of the evidence to convict must be measured against the jury charge. *Jackson v. State,* 898 S.W.2d 896, 898 (Tex.Crim.App.1995); *see Fisher v. State,* 887 S.W.2d 49 (Tex.Crim. App.1994).

In reviewing the legal sufficiency of the evidence, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Staley v. State,* 887 S.W.2d 885, 888 (Tex.Crim.App. 1994). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State,* 820 S.W.2d 154, 162 (Tex. Crim.App.1991); *Mack v. State,* 859 S.W.2d 526, 527 (Tex.App.—Houston [1st Dist.] 1993, no pet.). A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or

---

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2) (West 1994).

■ In determining whether an accused is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). Participation in an enterprise may be inferred from circumstances and need not be shown by direct evidence. *Id.* Circumstantial evidence may be sufficient to show that one is a party to the offense. *Id.; Ex parte Prior*, 540 S.W.2d 723, 728 (Tex.Crim.App.1976). If the evidence shows the mere presence of an accused at the scene of an offense, or even his flight from the scene, without more, then it is insufficient to sustain a conviction as a party to the offense. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App.1979). Standing alone, proof that an accused assisted the primary actor in making his getaway is likewise insufficient—even though the accused's conduct may constitute the independent offense of hindering apprehension or prosecution. *See* Tex. Penal Code Ann. § 38.05 (West 1994); *Guillory v. State*, 877 S.W.2d 71, 74 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be accorded their testimony. *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex.Crim.App.1974); *Davis v. State*, 831 S.W.2d 426, 434 (Tex.App.—Austin 1992, pet. ref'd). The jury is free to reject any or all evidence presented at trial. *Id.; see Russeau v. State*, 785 S.W.2d 387, 391 (Tex.Crim.App.1990).

The State asserts that "appellant and several of his buddies were riding around in appellant's 'big car' when they decided to 'jack' some Mexicans .... appellant and his buddies decided that appellant should wait in the car in order to provide a quick escape after the robbery." However, we are unable to find, and the State has failed to designate, where in the record evidence admitted before the jury supports the assertions other than

that appellant and his buddies were riding around in appellant's car.

None of the four defendants testified or offered other evidence before the jury. Appellant's two written statements and codefendant Loving's written statement were admitted in evidence before the jury. The names of all codefendants and some other matters were redacted from the statements before they were admitted in evidence. The jury was instructed that a defendant's written statement could be considered only against the defendant making the statement. However, appellant's attorney, while cross-examining the officer who obtained Loving's statement, asked the officer, in the presence of the jury, to reinsert appellant's name in Loving's statement where it had been deleted. In these circumstances, the jury could consider Loving's statement along with appellant's statements and any other evidence in the record for the purpose of determining appellant's guilt.

In pertinent part appellant's first statement reads as follows:

On 8/6/94 I was at the house, with * .[1] We drive to the club, Chesters. I saw a Black male I know as * . I met him earlier this year. * asked * if we could drop him off at his house. * got in the car and we went down to Dove Springs. * wanted to get dropped off out there. Before we got near the store * told me to pull over near a house, I thought thats where he stayed but instead * and * got out the car. I saw this ... who was talking to * and *, I saw ... them walk over to the store, I pulled the car to the store but * told me to park at the apartments behind the store. * pulled out ... from I think one of his pockets and thats when I saw a gun. I knew * carried a .32 revolver and it looked like the same gun. Its chrome colored. I then drove the car behind it and parked at some apartments. I backed the car up in the parking lot of the apartment complex. I stayed in the car. I turned the car off but had the windows rolled up and was listening to music. * and * ran to the car and got in. They

---

1. Names were deleted from the statement admitted in evidence before the jury.

told me to go, I asked them where they wanted to go and  *  told me to go the back way out of Dove Springs to Springdale. We ended up on Riverside and then I dropped off  * . ... While we were in the car and before I dropped them off  *  said that he had shot the Mexican that was sitting on the truck.  *  had hit one that was one standing.  *  must have already put up the gun because I didn't see it anymore.  *  and I went back home and thats when he told me that they had gotten about a thousand. He gave me one hundred dollars.

In pertinent part codefendant Loving's statement reads as follows:

We were all outside talking and thats when I saw Timothy Scott and  * .[2] Tim was driving a blue Cadiallac and  *  was sitting in the front passenger seat. ... Tim told me they were going that way so they would give me a ride home. ... I know Tim to smoke some weed, marijuana, I've known Tim for about two weeks and Ive known  *  for a couple of years. I got in the car with  *  and Tim and we drove toward Dove Springs. They were telling me that they were putting in some work. They told me they were .  *  asked me if I knew anyone they could get some weed from. I told them they could probably ask Monster, his real name is Mario Johnson. Tim was going to pull onto Merritt Circle but I told Tim it was "hot" there so I told him to pull into the store, Metro Mart. At the store me and  *  got out of the car,  *  told Tim to pull the car behind the store.  *  told Tim that he would be right back, he was going to go get some weed. I told them I was going to walk home, right across the street 5002 Merritt. There were a bunch of people at the store, we walked behind the store and  *  was talking to some dudes and I was talking to this guy named  * . Hes black, but light skin, 5'9", 130 lbs., he always wears a hat with  *  on it. I don't his real name. I think he might be related to  *  because he was talking to  *  like he really knew him. I was talking to this guy name "Big Black" I don't know his real name, I was telling him that I new that they had been acting real bad, they had been fighting some Mexicans in the circle, Merritt Circle. He said they were take care of business and had gotten into a big fight with the Mexicans.  *,  *, Big Black and I were standing out by Michael Johnsons fourplex, when Big Black was talking about how they were taking care of business out there and when he mentioned that the Mexicans always have a bunch of money thats when  *  said, "thats all I need to know."  *  and  *  walk off toward where the shooting happened. I stayed talking to Big Black, Big Black then told me that  *  and  *  were over there jacking some people.  *  had knocked one of the Mexicans and the Mexican was up underneath the car. I saw another Mexican on the roof of a truck.  *  was pointing at the Mexican on the roof and telling him to get down.  *  was on the side of the truck, he was also yelling at the Mexican to get down. The Mexican jumped down and  *  started chasing him. I think  *  shot the Mexican, I know  *  always carries a gun, he usually carries a .38 pistol. I heard at least one gun shot. I saw the Mexican laying on the ground, he had one hand extended out.  *  got the wallet from the the Mexican, the wallet is black and folds in two, its a big wallet.  *  told me to hurry up and follow him and  * . We got to the car, got in and  *  to told Tim to hurry up and leave. Tim drove the car away.  *  was sitting in the front passenger seat and me and  *  were in the back seat.  *  was talking about how he was  *  and was getting his stripes, he said he shot at he Mexican guy but didn't know if he hit him.  *  had a gun in the waistband of his pants, the gun was silver and was automatic. I told him ... my grandmother lives right across the street. Tim was driving and he ended up on Riverside Dr. I told Tim to drop me off there and I called a taxi to take me to my brothers place.  *  also got out on Riverside Dr.  *  gave me some money for the taxi. I think he gave me about $50.00.

Combined, these statements show that appellant (1) drove Loving and another code-

2. Names were deleted from the statement admit- ted in evidence before the jury.

fendant to the place where the robbery occurred, (2) waited for the codefendants in his car, (3) drove codefendants from the scene of the robbery, and (4) after leaving the scene, the codefendants told appellant they had committed robbery and gave appellant one hundred dollars.

We now consider appellant's second statement admitted in evidence. Appellant made his first statement on August 31, 1994. On November 16, 1994, while he was in jail, appellant told the officers he wanted to make another statement. In that statement appellant said:

> On the case in question Cornell Loving was not involved. I Timothy Scott did the offense. I regret involving Cornell Loving in the investigation. He was not involved. I did the act knowily. The act of Attempted Capal Muder. I feel I was wrong for doing it and am ready to take my consequences like a man. I did it close to one of his relatives house and I know he spent time out there so I tried to throw the investigation off by adding people.

Although the jury was free to believe appellant's second statement, there is no indication it did. It convicted Loving. Moreover, the officer who took appellant's first statement and Loving's statement testified she did not believe appellant's second statement. Appellant's second statement was incompatible with all of the other evidence. On the face of that statement appellant confessed to an offense of attempted capital murder for the purpose of absolving Loving of blame for that offense. The abandonment of the charge of attempted capital murder after jeopardy had attached was tantamount to an acquittal for that offense. We conclude a rational trier of fact could not find probative value in appellant's second statement to prove his guilt of the offense of aggravated robbery as a party by driving the getaway car as required by the courts jury instructions. Appellant's second statement adds nothing to show appellant's guilt of the offense of which he was convicted.

■ The State has not pointed out, and we cannot find, any evidence in the record other than Loving's and appellant's statements tending to support the jury's verdict finding the appellant guilty as a party to the offense of aggravated robbery. Although a jury may accept or reject any or all evidence adduced, a jury may not reach a verdict based on speculation. *Johnson v. State,* 673 S.W.2d 190, 196 (Tex.Crim.App.1984). A jury's verdict must be supported by evidence proving beyond a reasonable doubt every element of the offense of which a defendant is convicted.

■ We conclude the evidence, considered in the light most favorable to the jury's verdict, is not sufficient for a rational trier of fact to find beyond a reasonable doubt that before the codefendants committed the offense of robbery, appellant entered into a conspiracy and agreed to become a party to aid in the robbery by driving the getaway car. Therefore, the evidence, direct and circumstantial, is insufficient to support a necessary element of the offense of which appellant was convicted.

We reverse the judgment of conviction and render a judgment of acquittal.

Reversed and Rendered