COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-136-CR

 

MARVIN DWAYNE ALEXANDER                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

Appellant Marvin Dwayne
Alexander appeals his conviction and forty-five-year sentence for robbery
causing bodily injury.  In two points,
appellant argues that the evidence is legally and factually insufficient to
prove that he was acting with intent to promote or assist in the commission of
the offense or that he aided or attempted to aid Karl Walker in committing the
offense.  We affirm.

 








II.  Background Facts

On August 21, 2004 at
approximately 12:30 p.m., Marsha Hutchinson arrived at The Parks at Arlington
(the mall) and parked at the north entrance of JCPenney.  Hutchinson parked with the rear of her car
facing towards the driving lane, and the car next to her was facing the opposite
direction, with the front of the car facing towards the driving lane.








When Hutchinson got out of
her car, she noticed that two men were sitting in the car next to her car and
that the passenger had his door open. 
She nodded thank you to the passenger because he had shut his door so
that she could get into her parking spot. 
Hutchinson later tentatively identified the driver as appellant, and
Joseph Edward Smith, another mall patron, identified the passenger as Walker.  After shopping for approximately forty-five
minutes, Hutchinson left the mall and walked to her car.  She noticed that the two men were still in
the car, but she was not suspicious because she thought that they were waiting
for someone who was shopping inside the mall. 
When she walked past the car parked next to her car, Hutchinson stated, AOh, you=re still
waiting, huh?@ and AWell, they=ve got some
pretty good sales in there.@  Hutchinson had several
packages and went to her car to put them in the trunk.  While she was still loading the packages into
her trunk, Hutchinson noticed that Walker had exited the car and was standing
at the rear fender of her car on the driver=s side.  Without saying
anything, Walker reached over and grabbed Hutchinson=s purse with both hands. 
Hutchinson had her purse over her shoulder.  When Walker grabbed it, the purse moved down
to her elbow, and she closed her arm so that the purse was in between the
inside of her lower arm and the inside of her upper arm.  As Walker continued to pull on Hutchinson=s purse, she yelled at him to leave her alone.  While still struggling with Walker,
Hutchinson lost her balance and fell onto the concrete parking lot, and Walker
dragged her so that Walker was in the driving lane and Hutchinson=s body was still in between the cars.

During the struggle, Smith
was walking out to his car that was parked in the JCPenney parking lot and saw
that Walker was attempting to steal Hutchinson=s purse.  When Smith got closer
to Walker, Smith yelled AWhat are you
doing?@ and Walker let go of the purse and walked back over to the car where
appellant was waiting.  After Walker got
into the car, appellant drove off. 
Hutchinson suffered injuries to her leg, knee, hip bone, shoulder,
hands, and the back of her left arm.

The jury found appellant
guilty of robbery with bodily injury. 
Appellant pleaded true to the habitual offender notice in his
indictment, and the trial judge assessed appellant=s punishment at forty-five years in the Institutional Division of the
Texas Department of Criminal Justice.








III.  Legal and Factual Insufficiency

In two points, appellant
contends that the evidence is legally and factually insufficient to prove that
he was acting with intent to promote or assist the commission of the offense or
that he aided or attempted to aid Walker in committing the offense.  Specifically, appellant argues that the State
failed to establish his criminal liability under the law of the parties
doctrine.[2]

A.  Standards of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.  
        In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  








A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

Section 29.02 of the penal
code states AA person
commits [the] offense [of robbery] if, in the course of committing theft . . .
and with intent to obtain or maintain control of the property, he: (1)
intentionally, knowingly, or recklessly causes bodily injury to another.@  Tex. Penal Code Ann. ' 29.02(a)(1) (Vernon 2003). 
Section 7.02(a)(2) of the penal code states AA person is criminally responsible for an offense committed by the conduct
of another if: . . . (2) acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense.@  Id. ' 7.02(a)(2).  

Theft occurs when a person Aunlawfully appropriates property with intent to deprive the owner of
property.@  Id. ' 31.03(a) (Vernon Supp. 2005). 
The term A>[i]n the course of committing theft= means conduct that occurs in an attempt to commit, during the
commission of, or in immediate flight after the attempt or commission of theft.@  Id. ' 29.01(1).








C.  Applicable Facts

The evidence shows that on
August 21, 2004, Sergeant Kelly Velder, a police officer with the Arlington
Police Department, was working off-duty security in uniform at the mall.  At 2:20 p.m., Sergeant Velder received a
dispatch call that a robbery had been reported at the north side of JCPenney in
the parking lot.  When he arrived at the
parking lot, Nikki Burton, a mall security officer, was talking with
Hutchinson.  Sergeant Velder took over
the investigation when he got to the parking lot, and Hutchinson told him that
someone had attempted to take her purse. 
Sergeant Velder testified that Hutchinson was nervous and had marks on
her arms, hands, and across her left shoulder. 
He testified that he could tell where she had been dragged across the
asphalt and noticed that her clothes were disarrayed.








Smith testified that on
August 21, he arrived at the mall, parked his car in the JCPenney parking lot,
and noticed that a parked silver Kia[3]
had Walker and an unidentified man sitting in it.  Smith thought that it was strange that the
men would be sitting in the car because it was hot outside, but he thought that
they might be waiting for someone who was in the mall shopping.  After he had finished shopping, Smith walked
out to his car.  From afar, he thought he
saw kids playing in the parking lot, but when he got closer, he heard a woman
yell Ahelp me@ and saw
that Hutchinson was on her knees getting dragged by Walker.  He stated that Hutchinson was dragged
approximately ten to fifteen feet.  When
Smith got closer, he yelled to Walker, AWhat are you doing?@  Walker let go of Hutchinson=s purse and got into the passenger side of a Kia with Texas license
plate number X66-PLV.  Smith testified
that he did not look at the driver and he could not make a positive identification
of the driver when Detective Jim Ford, a detective from the Arlington Police
Department, contacted him to look at a photo lineup.  However, Smith later identified Walker from a
photo lineup as the man who attempted to steal Hutchinson=s purse. 

Detective Ford testified that
in August 2004, he was a member of the crimes against persons unit of the
Arlington Police Department and received an offense report that detailed the
robbery of Hutchinson.  Detective Ford
received the description of the car and the license plate in the original
offense report that was prepared by Sergeant Velder.  When Detective Ford ran a search in the Arunning motor vehicle@ license plate database, Detective Ford discovered that the car
belonged to EZ Auto Rental in Hurst, Texas. 
When Detective Ford contacted EZ Auto Rental, he was told that a AMartha Stewart@ had rented
the car and that the car was still in her possession.  On August 26, Detective Ford met with Stewart
at approximately 10:30 a.m., and Stewart told him that she had rented the car
and that her boyfriend, appellant, should still have it.








At approximately 11:30 a.m.
on August 26, Officer Crim of the Fort Worth Police Department contacted
Detective Ford and told him that appellant was in custody.  Detective Ford met with appellant at the Fort
Worth Police Department at 1:18 p.m.  At
first, Detective Ford let appellant tell his version of events on August
21.  After appellant was finished telling
his story, Detective Ford went back, wrote out a statement of events, had
appellant read it aloud to him, and had appellant initial and sign it to show
that he agreed with the statement. 
Appellant was able to make changes to the written statement. 








In this written statement,
appellant stated that on August 21[4]
he was at Stewart=s apartment
and drove the Kia to the car wash so that he and Stewart could take it back to
the rental agency.  While he was at the
car wash, appellant began experiencing chest pains and decided he needed to go
to the hospital.  He saw ARob Lowe@ at the car
wash, and Lowe took appellant to John Peter Smith Hospital and dropped him
off.  Lowe was driving the Kia and
appellant told him to take the car back to Stewart.  Appellant stated that he was in the hospital
until August 23.  Appellant claimed that
on August 26, while he was driving the car and Walker was a passenger, he was
stopped by the Fort Worth Police Department because the car was reported
stolen. Appellant stated that he did not steal the car or commit any robberies
with the car.

After his meeting with
appellant, Detective Ford went to John Peter Smith Hospital to verify whether
or not appellant had been admitted to the hospital; however, there was no
record that appellant had ever been a patient during the time that appellant
claimed he had been.

On September 3, Detective
Ford met with Hutchinson to show her a photo lineup that included appellant=s photo and a photo lineup that included Walker=s photo.  While looking at the
photo lineup with appellant in it, she pointed to appellant=s picture and stated, A[T]hat looks like him, but I can=t be absolutely positive.@  Hutchinson could not identify
Walker from the photo lineup.  On
September 9, Detective Ford went back to meet with Hutchinson so that she could
take another look at the photo lineups. 
Hutchinson again pointed to appellant and stated that she thought that
he was the driver, but she was not positive and could not identify Walker.








On September 13, Detective
Ford met with appellant at the Tarrant County Jail.  Detective Ford told appellant that he was
unable to verify appellant=s alibi on the day of the robbery. 
Appellant agreed to speak with Detective Ford and allowed Detective Ford
to take a second written statement. In this statement, appellant said that on
August 21 he took the car to the car wash and that while he was there, he had a
mild seizure and experienced chest pain and went to John Peter Smith
Hospital.  He said he was there for
approximately two hours and left around 10:00 a.m. after the hospital had given
him some medicine, which made him feel better. 
When he left the hospital, appellant claimed that he went back to the
car wash to finish cleaning the car and then went to the south side of Fort
Worth where he met up with Walker. 
Appellant stated that he went to the mall with Walker and that appellant
drove the Kia.

When they arrived at the
mall, appellant stated that AKarl told me to sit in the car and chill[,] and he would look for a
victim.@  While they were sitting in the
car, Hutchinson pulled into the parking spot next to them and went inside the
mall.  Appellant eventually got out of
the car and went into the mall to look at the fountain and to get an ice cream
cone while Walker stayed in the car. About ten minutes after appellant got back
to the car, Hutchinson was walking back towards her car and stated, AY=all still
out here?@  When she opened her trunk, Walker got out of
the car and walked up to Hutchinson and grabbed her purse, but Hutchinson held
onto it.  About that time, a man walked
up to Walker and said, A[S]top it,
the police [are] on the way,@ and appellant told Walker, A[L]et=s go.@ 

 








D.  Analysis

Standing alone, proof that an
accused was present at the scene of the crime or assisted the primary actor in
making his getaway is insufficient.  Wooden
v. State, 101 S.W.3d 542, 546 (Tex. App.CFort Worth 2003, pet. ref=d); Scott v. State, 946 S.W.2d 166, 168 (Tex. App.CAustin 1997, pet. ref=d).  The evidence must show that
at the time of the offense the parties were acting together, each contributing
some part towards the execution of their common purpose.  Wooden, 101 S.W.3d at 546; Brooks
v. State, 580 S.W.2d 825, 831 (Tex. Crim. App. [Panel Op.] 1979).  Evidence is legally sufficient to convict
under the law of parties when the defendant is physically present at the
commission of the offense and encourages its commission by acts, words, or
other agreement.  Wooden, 101
S.W.3d at 546.  Circumstantial evidence
may be used to prove party status.  Escobar
v. State, 28 S.W.3d 767, 774 (Tex. App.CCorpus Christi 2000, pet. ref=d).  








Whether an accused
participated as a party to an offense may be determined by examining the events
occurring before, during, and after the commission of the offense and by the
actions of the accused that show an understanding and common design to commit
the offense.  Id.  In determining the sufficiency of the
evidence to show an appellant=s intent and faced with a record that supports conflicting inferences,
we must presume, even if it does not affirmatively appear in the record, that
the trier of fact resolved any such conflict in favor of the prosecution, and
we must defer to that resolution.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); Escobar, 28
S.W.3d at 774. 

Appellant relies on Amaya
v. State, to show that the evidence was insufficient to demonstrate that he
was involved in the robbery. 733 S.W.2d 168, 174 (Tex. Crim. App. 1986).  In Amaya, the court of criminal
appeals held that Awe cannot
hold [the defendants] accountable as parties without some indication that they
knew they were assisting in the commission of an offense.@  Id.  The court goes on to state that, 

We
require a higher level of complicity from those we denote parties than those we
denote primary actors, because the former are performing acts that are not
illegal in and of themselves; the acts only attract criminal liability because
of the result they are directed to, the commission of the crime. 

 

Id. 
Here, appellant knew that he was
assisting in the commission of the offense because he stated that he watched
Walker get out of the car and walk over to Hutchinson and attempt to steal her
purse.  Additionally, after appellant
heard that the police had been called, he told Walker, A[L]et=s go,@ and waited for him to get back in the car before driving off. 








Here, appellant drove Walker
to the mall; he provided access to the car that was used in the offense and
that was also used to flee the scene. 
After Walker told appellant to Achill@ while
Walker looked for a Avictim,@ appellant stayed in the car and left the car only to go into the mall
to get an ice cream cone and look at the fountain.  In his statement to Detective Ford on September
13, appellant admitted that he was in the car when Walker got out of the car,
walked over to Hutchinson, and attempted to take her purse.  Hutchinson testified that she yelled for
someone to help her and that it was loud enough for someone far away to
hear.  We believe that it is a
permissible inference from the evidence that appellant was able to hear
Hutchinson=s pleas for
help because he was in the car next to Walker and Hutchinson and his written
statement shows that he knew Walker was Alook[ing] for a victim.@ 

In addition, when appellant
heard Smith tell Walker that the police had been called, appellant told Walker,
A[L]et=s go,@ and waited for Walker to get back into the passenger side of the car
before driving off.  Appellant was also
untruthful about his alibi the first time that Detective Ford questioned
him.  Only after Detective Ford returned
and told appellant that he knew that appellant had not been at the hospital did
appellant admit that he was present during the robbery.  








After reviewing the evidence
under the appropriate standards of review, we conclude that the jury could have
inferred that appellant, by his actions in watching Walker attempt to steal
Hutchinson=s purse and
waiting for Walker to get into the car before driving off, intended to promote
or assist in the robbery and thereby aided in the commission of the
offense.  See Escobar, 28 S.W.3d
at 774 (holding that defendant aided in aggravated robbery when he got into car
while codefendant was holding gun out of window).  

Viewing the evidence in the
light most favorable to the verdict, we hold that a rational trier of fact
could have found beyond a reasonable doubt that appellant aided in the
commission of the offense; therefore, we overrule appellant=s first point.[5]  Additionally, when viewed neutrally, the
evidence is not so obviously weak as to render the verdict clearly wrong
or so greatly outweighed by contrary proof as to indicate manifest
injustice.  Thus, we overrule appellant=s second point.

IV.  Conclusion

Having overruled appellant=s two points, we affirm the judgment of the trial court.  

PER CURIAM 

 

PANEL F:    LIVINGSTON, GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
December 15, 2005











[1]See Tex. R. App. P. 47.4.





[2]The
law of parties doctrine is codified as section 7.02 of the penal code.  Tex.
Penal Code Ann. ' 7.02
(Vernon 2003).





[3]The
Kia was actually light blue in color.  





[4]In
his written statements appellant refers to the date as August 14; however, all
of the evidence and testimony state that the robbery occurred on August 21.





[5]The
State correctly points out that under the corpus delicti rule, there was
other evidence in addition to appellant=s statements showing the
robbery actually occurred.  See
Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002).