IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00402-CV

 

In re
Diana Faye Lewis, Individually and as

Independent
Executrix of the Estate of

Doris
A. Lewis, Deceased, and as Trustee

Of the
Doris A. Lewis Living Trust

 

 



Original Proceeding

 



DISSENTING Opinion










 

          It has always been the accepted
general rule that the trial court clerk does not proceed to file a pleading
until the filing fee is paid.  The Supreme Court did create an exception when
the time of filing was critical to preserving a party’s ability to pursue an
appeal.  This line of cases is easily distinguished in that the exception
created relates to the preservation of the right of appeal.[1] 
The motion in our case does not impact the perfection of the right to an appeal
for having the merits of the case reviewed, so the exception to the general
rule created by the line of cases cited by the relator and the majority should
not be applied to this case.  As stated by the Texas Supreme Court in the last
pronouncement of the policy for this line of cases, “We construe the Rules of
Appellate Procedure liberally, so that decisions turn on substance rather than
procedural technicality.”  Garza, 137 S.W.3d at 38.  But the issue
before us is entirely a rule of procedure, and the rules should be enforced –
otherwise, chaos reigns.

          There is one case in this line of
cases with a secondary holding that is, however, applicable to our case.  In Garza,
the Texas Supreme Court notes that there are two effects of filing the motion. 
First, it sets the appellate time table.  The holding on this issue is that the
filing of the motion for new trial, even without the payment of the filing fee,
extended the time within which a notice of appeal could be filed.  The second
holding was that the failure to timely pay the filing fee before the court lost
its plenary power meant that the motion for new trial did not preserve the
appellant’s factual insufficiency complaint for review, because that issue was
never properly made to the trial court.  Garza, 137 S.W.3d at
38.  

            In our case, the real-party-in-interest filed
its motion to transfer the case to a district court prior to the time the fee
was paid on the relator’s motion to transfer the case to a probate court. 
Thus, by the time the fee was paid for relator’s motion, the trial court had
lost the authority to do anything other than to grant the real-party-in-interest’s
motion.  In effect, applying the second holding in Garza, the relator
failed to preserve his right to have the case transferred to a probate court
because, by the time the relator paid the filing fee, the
real-party-in-interest had already filed a motion to transfer the case to a
district court which the trial court had no option but to grant.  Thus, by the
time the relator paid the fee, the trial court had no authority to transfer the
case to a probate court.

Relator did not pay the filing fee when the
motion to transfer was first presented for filing.  The natural result of this
failure under the general rule is that the clerk did not file the motion. 
Before relator paid the filing fee and tendered the motion to transfer the case[2]
to a probate judge, a motion to transfer the case to a district judge was
filed.  See Tex. Prob. Code Ann.
§ 5(b)(1) & (2) (Vernon Supp. 2005).  The appropriate fee was paid when the
motion to transfer the case to a district judge was tendered for filing.  The county
judge did what any reasonable, analytical, rules-oriented person would have
done – he granted the first properly filed motion to transfer the case.  Indeed,
it could be viewed as what we are determining is whether the district clerk
should be compelled to give relator’s motion a filing date prior to the date
that it was actually filed.  

          At this Court, our clerk files
everything tendered for filing and tries to collect the fees later if they are
not paid at the time of filing.  This is a matter of convenience because we do
not have a way to keep track of pleadings that remain unfiled because the
filing fee has not been paid.  Our system has created its own set of problems. 
Just a few of those problems are (1) the clerk must act as a collection agent
for our Court, (2) there is different treatment by justices if the fee remains
unpaid,[3]
and (3) the need to write off uncollected filing fees.

          I would not impose the system that we
have chosen to use on all the trial court clerks.  And I would not expand the
exception to the rule which is applicable to documents which impact the timing
of perfecting an appeal.  By this holding, the exception, at least as to the
date of filing, has now swallowed the rule.




Conclusion

I do not find that the trial court abused its
discretion.  I would deny the petition for writ of mandamus.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed March 15, 2006









[1]   
Garza v. Garcia, 137 S.W.3d 36 (Tex. 2004); Tate v. E.I.
DuPont de Nemours & Co., Inc., 934 S.W.2d 83 (Tex. 1996); Jamar v.
Patterson, 868 S.W.2d 318 (Tex. 1993); Mr. Penguin Tuxedo Rental &
Sales, Inc. v. NCR Corporation, 787 S.W.2d 371 (Tex. 1990); Standard
Fire Insurance Co. v. LaCoke, 585 S.W.2d 678 (Tex. 1979); Polley v. Odom,
937 S.W.2d 623 (Tex. App.—Waco 1997, no writ).





[2]
  I address only the issue the parties
have presented and not the propriety of transferring the entire case, the
entire probate proceeding, to the probate judge, rather than the contested
portion of the probate case.  See Tex.
Prob. Code Ann. § 5(b)(1) & (2) (Vernon Supp. 2005).





[3]
  The real-party-in-interest points out
that because the fee had not been paid, the county judge could not have
properly considered or granted relator’s motion to transfer at the time the
motion to transfer filed by the real-party-in-interest was filed.








that he reported the robbery to 911. 
He identified State’s exhibit 6 as a weapon that looked like the weapon used in the robbery.
      Fotion testified that Conroe police requested he go home. He indicated that police called him
within an hour at his apartment, asking him to go to a Motel 6 on I-45. He stated that upon his
arrival he observed several individuals who were under arrest. He identified Christopher Taylor
as his assailant.
      Raymond Howard Hill, a crime scene investigator for the City of Conroe Police Department,
testified that he went to the Chevron store after the robbery and was able to obtain fingerprints
from the area of the counter that the cashier had indicated as the area that the assailant might have
touched.
      Michelle Randolph, an ex-girlfriend of Christopher Taylor, testified that she was with
appellant, Christopher Taylor, and others at the appellant's house on the evening of the robbery. 
She indicated that Christopher Taylor and appellant left the house somewhere between 10 and
10:45 p.m. She said Christopher Taylor was driving the car when they left. She said they went
to the Motel 6 after they returned, where they encountered police.
      Officer Jimmy Chilcutt, a latent fingerprint examiner for the Conroe Police Department,
testified that he compared known fingerprints of Christopher Taylor to a print taken from the
counter where the robbery occurred and that the print on the counter was that of Christopher
Taylor.
      Lenny Robinson, a friend and former co-worker of appellant, testified that at the time of trial
he was in prison for violation of his probation. He indicated that on the evening of the robbery
he was with appellant, Christopher Taylor, and others at appellant's place of residence. He stated
that on one occasion Christopher Taylor and appellant left the residence and were gone about an
hour or so. He related that Christopher Taylor had counted out a few dollars to appellant after
they had returned. He indicated that he did not know the amount. He said he had seen
Christopher Taylor with a handgun at the house. He said appellant brought a shotgun from the
house to the car before they went to the Motel 6, saying that he wanted to sell it. He reported that
police confronted them at the Motel 6.
      Officer Joseph Farah testified that on August 28, 2000, he was a police officer with the
Conroe Police Department. He indicated that he was present when Christopher Taylor was
arrested at the Motel 6. He stated that Christopher Taylor was the driver of the car at the time of
his arrest.
      James Scott Moore testified that on August 28, 2000, he was a deputy sheriff with the
Montgomery County Sheriff's Office, assigned to the patrol division. He indicated that while
patrolling just outside the city he observed a car, its motor running and someone sitting in the
driver's seat, parked to the side of a Citgo store. He related that he was suspicious because the
parking places in front of the store were all unoccupied. He said that a black male with no shirt
and baggy pants came out and got in the passenger side of the vehicle. He identified Christopher
Taylor as the individual who had been in the store and who got into the passenger side of the
vehicle. He related that he obtained a license plate number of the vehicle, which was a large,
dark-brown, four-door Cadillac.
      Officer Moore testified that thereafter he received a dispatch concerning the robbery at the
Chevron store, involving a large dark brown Cadillac. He stated that he called the Conroe Police
Department on his radio and told them that he had seen a vehicle similar to the one described. He
provided them with a license plate number of the vehicle he had seen. He said that the Chevron
store is located approximately 8-9 miles from the Citgo store and that it would take about 10
minutes to get there. He estimated that the vehicle left the Citgo store probably about 10:05-10:06
p.m.
      The evidence shows that Christopher Taylor, not appellant, committed the robbery. The
Texas Penal Code provides that a person is criminally responsible for an offense committed by the
conduct of another if, acting with the intent to promote or assist the commission of the offense,
he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Tex. Pen. Code § 7.02(a)(2) (Vernon 1994).
      Considering all of the evidence, including evidence that appellant and Christopher Taylor left
appellant’s place of residence and returned together, evidence that Christopher Taylor was
accompanied by just one other person at both the Citgo store and the robbery, and evidence that
Christopher Taylor gave money to appellant after the robbery, a jury could reasonably conclude
that appellant was with Christopher Taylor both at the Citgo store and at the Chevron store during
the robbery. Given the same evidence, including evidence that Christopher Taylor was the
passenger in the car at the Citgo store, and evidence of the suspicious location of the car at the
Citgo store, the jury could reasonably conclude that appellant was serving as the driver of the
getaway car during the robbery and that he knew that a robbery was taking place. We hold that
the evidence is legally sufficient to support appellant’s conviction. See Thompson v. State, 697
S.W.2d 413, 417 (Tex. Crim. App. 1985).
      Appellant relies upon Scott v. State, 946 S.W.2d 166 (Tex. App.—Austin 1997). We find
Scott to be distinguishable. In Scott, evidence showed that the defendant drove the party who
committed a robbery to the scene and away from the scene. Id. at 168-69. However, in Scott,
the jury was charged that to convict the defendant it must find that before a codefendant committed
robbery, the defendant entered into a conspiracy and agreed to become a party to aid in the
robbery and did so by driving the getaway car after the robbery. Id. at 167. While the charge in
this case contained a charge on conspiracy, it also instructed the jury that it could convict appellant
if it found beyond a reasonable doubt that appellant solicited, encouraged, directed, aided, or
attempted to aid Christopher Taylor to commit the offense.
      Appellant urges that at best the evidence shows that he was merely present when the robbery
was committed and that the evidence failed to show that he had any prior knowledge that
Christopher Taylor was going to commit the robbery. As noted, we believe the evidence shows
that appellant was not merely present during the robbery but was driving the getaway car with
knowledge that the robbery was taking place. We overrule appellant’s issue one.
      Applying the test for determining the factual sufficiency of the evidence, we do not find the
evidence proving guilt is so obviously weak as to undermine confidence in the verdict, nor do we
find that the proof of guilt is greatly outweighed by contrary proof. Further, we do not find that
it is necessary to find the evidence factually insufficient in order to prevent manifest injustice. We
overrule appellant’s issue two.
      The judgment is affirmed.

                                                                         JOHN G. HILL
                                                                         Senior Justice

Before Chief Justice Davis,
      Justice Vance, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed November 20, 2002
Do not publish
[CR25] [CRPM]