COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-164-CR

 

 

JAMES GLEN GRAY                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction








In seven points, Appellant James Glen Gray
appeals his convictions for two counts of felony murder.  The judgments of the trial court are modified
to reflect that the conviction for count one is robbery and the conviction for
count two is robbery.  As modified, the
judgments are affirmed as to the convictions. 
The portion of the judgments assessing punishment is reversed, and the
cause is remanded for a new trial as to punishment only.

                              II.  Factual and Procedural History

Detective Mark Malcom of the Mansfield police
department testified that in March 2003, Steven Ashford gave the police a
written statement in which he confessed to the murders of Kevin Ogdie and Kelly
Chance.  When asked if anyone else had
been involved, Ashford implicated two other individualsCGray and
Gray=s brother,
Michael.  Upon further questioning,
Ashford told Detective Malcom that he had used a .22 caliber pistol to commit
the murders and that the gun could be found in the master bedroom of Gray=s parent=s house
(AGray=s house@).  After obtaining a search warrant, Detective
Malcom searched Gray=s house and found the gun in the
exact location that had been described by Ashford.  Detective Malcom also found in the house a
fire safe that met the general description of a Asecure
chest@
belonging to Kevin and Kelly, a pair of black slip-on shoes that matched
Ashford=s
description of the shoes he had worn during the commission of the offense, and
a knife believed to have been used in the commission of the offense.








During the investigation, the police obtained two
written statements from Gray.  In his
first statement, Gray indicated that he had gone with Ashford to someone=s apartment
to pick up Asome dope@ and
that Ashford had told him to wait downstairs. 
While waiting downstairs, Gray claimed that he had heard gunfire and
that, after the gunfire had stopped, Ashford had yelled at him to come up to
the apartment.  Upon entering the
apartment, Gray said that he had seen a man and a woman who had been shot.  Gray stated that Ashford had told him that he
had shot the man and woman because they owed him money and had stolen from him.

In a subsequent statement, Gray expanded upon the
details of what had happened leading up to, and immediately after, the
shootings:








I met Stephen Ashford at
an a[c]quaintance of mine=s house.  I was installing cable at his house and
[Ashford] was there.  We started talking
and realized that we had met a few years back when he was a doorman at a bar.  We were messing around on the computer and
started talking about computers.  I asked
him if he could clean up my hard drives on my computers.  He said he could and asked if I would bring
them over the next day.  I brought the
computers over the next day [and] he told me one of them wasn=t worth fixing and the
other he could.  We were hanging out and
had done some speed, and I asked if he could come over to my house and look at
my tower at the house and install some programs.  We went to my house and did some work on
[the] computer and did some more speed. 
At the house we started talking about his military career and shooting
guns.  My family has always been into
hunting and fishing so I showed him a few of our guns and we talked about going
to the range and shooting some skeet.  We
ran out of speed and he said he had a guy that owed him and we could get it
from him, and if he wouldn=t give it to him he would beat him up and take
it.  He had some walkie-talkies and said
that if anything went wrong he would hit the button on the walkie-talkie.  We went over to the apartment.  My brother Mike drove and stayed in the
car.  I stayed downstairs while [Ashford]
went upstairs.  He was upstairs for a
minute or two, then I heard gunfire.  I
looked around and didn=t know [whether] it came
from the apartment he was in or somebody else=s.  He opened the door and told me to come
in.  When I [went] in I saw a woman on
the couch and a man on the ground.  [Ashford]
was standing in the living room next to the hallwayChe was carrying my dad=s .22 caliber
pistol.  He told me to put a radio in the
bag [and] a CD player and then he kicked open a hall doorway and went into a
bedroom.  He came out with a small
shoebox sized safe and put it in the bag. 
He told me to grab the bag and go. 
At that time I was about to throw up [and] I didn=t want to argue with a
man with a gun so I grabbed the bag and went downstairs and walked to the
car.  Right before we got to the gate he
radioed Mike and told him not to go anywhere. 
When we got back, [Ashford] got in [the] front [and] I got in [the]
back.  I told my brother to get us home.
. . .  Mike asked what the easiest way
was to get home, so [Ashford] told him how to get home.  When we got home I told Mike what [had]
happened so if anything happened to me he could report it.  [Ashford] stayed with us another day and we
took him home the next day.  The next day
after, I took his clothing and a bag with a radio he had left at our
house.  I am sorry for not coming forward
earlier but I was afraid for myself and my family if I said anything.  I am also sorry for ever getting involved
with [Ashford]. 

 








The State charged Gray with two counts of felony
murderCcount
one and count twoCbased on the theory that Gray,
under the law of parties, had shot Kelly and Kevin in the course of committing
aggravated robbery.  The State also
charged Gray with two counts of aggravated robbery with a deadly weaponCcount
three and count four.  The State,
however, eventually waived counts three and four and requested that they be
placed under counts one and two as lesser included offenses; robbery was also
included as a lesser included offense. 
At the close of evidence, a jury found Gray guilty of two counts of
felony murder.  In a separate trial on
punishment, the trial court sentenced Gray to fifteen years=
confinement for each count, to run concurrently.  This appeal followed.

                               III.  Sufficiency of the Evidence

In his fourth through seventh points, Gray
challenges the legal and factual sufficiency of the evidence to support his
convictions for felony murder. 
Specifically, Gray asserts that the evidence is legally and factually insufficient
because there was no evidence that he intended to commit an act clearly
dangerous to human life, nor was there evidence that he had knowledge of
Ashford=s taking
a gun to commit the offense.  We agree.

The jury charge in this case authorized the jury
to convict Gray on count one and count two of felony murder either as a
principal or as a party.  See Tex.
Penal Code Ann. ' 7.02(a)(2) (Vernon 2003).  Because the evidence is insufficient to
support Gray=s convictions as a principal,[2]
we address whether the evidence is sufficient to support his convictions under
the law of parties.








A.  Standards of Review

When reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). 
This standard gives full play to the responsibility of the trier of fact
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.

When a court of appeals concludes that evidence
is legally insufficient to support a conviction, it may reform the judgment to
reflect conviction of a lesser included offense if the evidence is sufficient
to support conviction of the lesser included offense and either the jury was
charged on the lesser included offense or one of the parties asked for but was
denied such an instruction.  Collier
v. State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999).








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v. State,
256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.

B.  Applicable Law








A person commits felony murder if, in the course
of and in furtherance of the commission or attempted commission of a felony, he
commits or attempts to commit an act clearly dangerous to human life that
causes the death of an individual.[3]  See Tex. Penal Code Ann. '
19.02(b) (Vernon 2003).  A person commits
the felony offense of aggravated robbery if, in the course of committing a
theft, he intentionally or knowingly places another in fear of imminent bodily
injury or death and uses or displays a deadly weapon.  See id. '' 29.02B.03
(Vernon 2003).  A person commits theft if
he unlawfully appropriates property with intent to deprive the owner of
property; appropriation of property is unlawful if it is without the owner=s effective
consent.  See id. '
31.03(a), (b)(1) (Vernon 2003 & Vernon Supp. 2008).

Under the law of parties, Aa person
is criminally responsible as a party to an offense if the offense is committed
by his own conduct, by the conduct of another for which he is criminally
responsible, or by both.@ 
See id. ' 7.01(a) (Vernon 2003); Vodochodsky
v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005).  A person is criminally responsible for the
offense of another, and thus can be convicted as a party, if, acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person committing the
offense.  Tex. Penal Code Ann. '
7.02(a)(2).  Though mere presence does
not automatically make one a party to a crime, it is a circumstance tending to
prove party status and, when considered with other facts, may be sufficient to
prove that the defendant was a participant. 
Porter v. State, 634 S.W.2d 846, 849 (Tex. Crim. App. [Panel Op.]
1982).  In determining whether the
defendant acted as a party, we review events occurring before, during, and
after the offense and may rely on actions of the defendant that show an
understanding and common design to commit the offense.  King v. State, 29 S.W.3d 556, 564
(Tex. Crim. App. 2000).








C.  Discussion

In order to convict Gray as a party to felony
murder based on the underlying felony of aggravated robbery, the State had to
prove that Gray was criminally responsible for Ashford=s use or
exhibition of a deadly weapon during the offense.  See Stephens v. State, 717 S.W.2d 338,
340 (Tex. Crim. App. 1986) (stating that, in order to convict defendant as a
party to aggravated offense, State must prove that defendant was criminally
responsible for aggravating element); Wooden v. State, 101 S.W.3d 542,
547B48 (Tex.
App.CFort
Worth 2003, pet. ref=d).  In other words, the State had to prove that
Gray acted with intent to promote or assist Ashford in committing aggravated
robbery, that is, that he solicited, encouraged, directed, aided, or attempted
to aid Ashford in placing Kevin and Kelly in fear of imminent bodily injury or
death and in using or displaying a deadly weapon.  See Tex. Penal Code Ann. '
7.02(a)(2).








Gray=s
written statements were the only evidence presented at trial pertaining to Gray=s
involvement in what had occurred before, during, and after the commission of
the offenses.[4]  From the evidence, we know that, on the day
the offenses occurred, Gray showed Ashford his father=s guns;
that Gray went with Ashford to Kevin and Kelly=s apartment
to get more drugs, knowing that Ashford might beat Kevin and Kelly up
and take the drugs without their consent; that Gray was downstairs when the
shootings occurred; and that Gray saw Ashford with Gray=s father=s gun after
the shootings had occurred.

There is no evidence, however, as to the timing
of Gray=s
showing Ashford the guns and their conversation about beating Kevin and Kelly
up and taking the drugs.  There is no
evidence to suggest that Gray encouraged or directed Ashford to take or use a
gun against Kevin and Kelly in order to get the drugs.  There is no evidence that Gray gave Ashford
one of the guns or that he had seen Ashford take one of the guns.  Nor is there evidence that Gray, at any time
before or during the commission of the aggravating element, became aware of
Ashford having or using a gun.








Based on the evidence in the record, the jury
could have reasonably inferred that Gray, by going with Ashford to Kevin and
Kelly=s
apartment, had agreed to be a party to beating Kevin and Kelly up and taking
the drugs without their consent.  See
Hooper v. State, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (defining
inference as a conclusion reached by considering other facts and deducing a
logical consequence from them).  It was
not reasonable, however, for the jury to infer that because Gray had shown his
father=s guns
to Ashford, that Gray knew Ashford had taken one of the guns with him to Kevin
and Kelly=s apartment, or that Gray
intended to encourage or direct Ashford in using the gun during the
confrontation with Kevin and Kelly.  See
id. (defining speculation as mere theorizing or guessing about the possible
meaning of facts and evidence presented).








Further, the facts of this case are
distinguishable from prior cases in which courts of appeals have held that the
evidence is legally sufficient when a party to aggravated robbery learns of a
deadly weapon during the commission of the offense and yet continues to
participate in the offense.  See
Escobar v. State, 28 S.W.3d 767, 774 (Tex. App.CCorpus
Christi 2000, pet. ref=d) (holding that evidence was
legally sufficient to support aggravated robbery conviction under law of
parties because defendant got into get-away vehicle with stolen items while
other party pointed a firearm at victim); Anderson v. State, No.
14-00-00810-CR, 2001 WL 1426676, at *2 (Tex. App.CHouston
[14th Dist.] Nov. 15, 2001, pet. ref=d) (not
designated for publication) (concluding evidence was legally sufficient to
support defendant=s conviction for aggravated
robbery as a party when defendant continued to participate in the offense after
seeing co-defendant pull out a gun and point it at complainant=s face).

Here, the record reflects that not only did Gray
lack knowledge as to the presence of the gun before the shootings but also that
he did not learn about the gun until after the shootings had occurred.  We conclude, therefore, that there is legally
insufficient evidence to show that Gray and Ashford were acting together, each
contributing some part toward the execution of placing Kevin and Kelly in fear
of imminent bodily injury or death and in using or displaying a deadly
weapon.  See Wooden, 101 S.W.3d at
548 (stating that there was no evidence in the record that the appellant knew
there was a gun in the car or that he aided or encouraged a co-defendant to
threaten the victim with a gun); Scott v. State, 946 S.W.2d 166, 168
(Tex. App.CAustin 1997, pet. ref=d)
(holding that the evidence did not suggest that defendant, who drove companions
to a location where, without his knowledge, they committed aggravated robbery,
had prior knowledge of his passengers= intent
or that the defendant knowingly assisted his passengers in the offense).








Therefore, because it was unreasonable for the
jury to infer that Gray had knowledge of the gun, and because the evidence
reflects that Gray did not become aware of the gun until after the aggravating
element had occurred, we hold that the evidence is legally insufficient to
prove that Gray was criminally responsible for Ashford using or displaying a
deadly weapon during the commission of robbery and, therefore, is legally
insufficient to support Gray=s
convictions for felony murder. 
Accordingly, Gray=s fourth and sixth points are
sustainedCwe need not address Gray=s
remaining points of error.[5]  See Tex. R. App. 47.1.








Having determined that the evidence is legally
insufficient to support the jury=s
verdicts for the offense of felony murder, and having impliedly determined that
the evidence is legally insufficient to support convictions for the lesser
included offense of aggravated robbery, we now consider whether the evidence is
sufficient to support convictions for the lesser included offense of
robbery.  See Collier, 999 S.W.2d
at 782.

A person commits the offense of robbery if, in
the course of committing theft and with intent to obtain or maintain control of
the property, he intentionally, knowingly, or recklessly causes bodily injury
to another or intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.  Tex.
Penal Code Ann. 29.02(a).

Gray=s second
written statement established that he went with Ashford to Kevin and Kelly=s
apartment knowing that Ashford might beat up Kevin and Kelly and take the drugs
without their consent.  A reasonable
juror could conclude that, under the law of parties, Gray acted with intent to
promote or assist Ashford in committing robbery, that is, that Gray entered an
agreement in which robbery was contemplated, that Gray went with Ashford to the
location of the offense, and that Gray acted with the intent to promote or
assist the robbery by acting as the lookout. 
See Tex. Penal Code Ann. '
7.02(a)(2).  Considering the evidence
under the standards of review set forth above, we hold that it is legally and
factually sufficient to support convictions for robbery.








                                          IV.  Conclusion

Having held that the evidence is legally
insufficient to convict Gray of two counts of felony murder but sufficient to
convict him of two counts of robbery, we modify the trial court=s
judgment on count one to delete the conviction of murder and to instead reflect
a conviction of the lesser included offense of robbery, we likewise modify the
trial court=s judgment on count two to
delete the conviction of murder and to instead reflect a conviction of the
lesser included offense of robbery, and we affirm the judgments as to the
convictions as modified.  We also reverse
the trial court=s judgments on punishment and
remand the case to the trial court for a new trial on punishment only.  See Tex. R. App. P. 43.2(c), (d).

 

BOB
MCCOY

JUSTICE

 

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

CAYCE, C.J. dissents
without opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: July 2, 2009











[1]See Tex. R. App. P. 47.4.





[2]The undisputed evidence
presented at trial showed that Ashford had been the one to shoot Kevin and
Kelly, and that Gray had not been in the room when the shootings occurred.





[3]As previously stated, the
State alleged that the felony underlying Gray=s felony murder charges
was aggravated robbery.





[4]The evidence not
previously described above included testimony from (1) Jesse Press, a
maintenance worker at Kevin and Kelly=s apartment, who testified as to what he saw when
he found Kevin and Kelly=s bodies two days after
the shootings; (2) Constance Patton, a medical examiner, who testified about
items seized from Gray=s house and Ashford=s car, including the
knife found in Gray=s home which did not have
any blood on it; (3) Frank Schiller, a forensic consultant, who testified about
the drugs found in Kevin and Kelly=s apartment; and (4) Marc Krouse, a medical
examiner, who testified as to the wounds sustained by Kevin and Kelly.





[5]In two of Gray=s remaining points, he
argues that the evidence is factually insufficient to support convictions for
aggravated robbery, however, because we have concluded that the evidence is
legally insufficient, we need not address Gray=s arguments pertaining to
factual sufficiency.  See Tex. R.
App. 47.1.  In Gray=s remaining three points,
he asserts that the trial court erred by excluding statements that he had made
to his father regarding the offense. 
Gray claims that the information in the excluded statements negates an
element of the offense, namely that Gray acted with the intent to promote the
commission of an aggravated robbery. 
Gray concedes there was sufficient evidence for robbery.  As we have already concluded, based on the
evidence presented at trial, the evidence is legally insufficient to support
Gray=s convictions for aggravated
robbery, we need not address Gray=s three remaining points.  Furthermore, essentially the same information
in the excluded statements came in through Gray=s written
statements.  Therefore, any error from
the trial court by refusing to admit the statements is harmless.  See Mayes v. State, 816 S.W.2d 79, 88
(Tex. Crim. App. 1991) (concluding that any error in admitting evidence is
cured where the same evidence comes in elsewhere without objection).