Opinion filed November 5, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed November 5,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00359-CR

                                                       ________

 

                                    LARRY
DALE SMITH, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 35th District Court

                                                          Brown
County, Texas

                                                 Trial
Court Cause No. CR19032

 



 

                                             M
E M O R A N D U M   O P I N I O N








Larry
Dale Smith appeals his conviction by a jury for the offense of possession of
methamphetamine in an amount of one gram or more but less than four grams.  The
jury, having found the allegations contained in an enhancement paragraph to be
true, assessed his punishment at twenty years confinement in the Texas
Department of Criminal Justice, Institutional Division.  Smith contends in nine
points on appeal that the evidence is legally and factually insufficient to
support his conviction  (Points One, Two, Three, and Four); that the trial
court erred in failing to instruct the jury that, if he knowingly possessed the
methamphetamine, such possession must have been voluntary before it could find
appellant guilty (Point Five); that the trial court erred by authorizing the
jury to convict him under the law of parties (Point Six); that the trial court=s charge violated his right
to a unanimous jury verdict under Article V, section 13 of the Texas
Constitution and under the provisions of the Texas Code of Criminal Procedure
(Points Seven and Eight); and that the trial court=s charge authorized the jury to convict him
without being convinced beyond a reasonable doubt that he committed every element
of the offense for which he was convicted (Point Nine).  We affirm.

Smith
contends in Points One, Two, Three, and Four that the evidence is legally and
factually insufficient to support his conviction.  In order to determine if the
evidence is legally sufficient, the appellate court reviews all of the evidence
in the light most favorable to the verdict and determines whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979).  To determine if the evidence is factually sufficient, the appellate
court reviews all of the evidence in a neutral light. Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v.
State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23
S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404,
407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). Then, the reviewing court determines whether the
evidence supporting the verdict is so weak that the verdict is clearly wrong
and manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence. Watson, 204 S.W.3d at 414-15;
Johnson, 23 S.W.3d at 10-11.

Lieutenant
John C. Harper of the Brownwood Police Department testified that he sought to
stop a car with a driver and two passengers for a minor traffic violation but
that the driver did not stop when he sought to pull over the vehicle.  He said
that, during his chase of the vehicle, just after the vehicle had made a left
turn onto Washington, he saw something white thrown from the right front window
of the vehicle.  He indicated that it went onto the embankment there.  He
stated that he requested Officer Bryan Keith to secure the area until a search
for the object could be conducted.

Lieutenant
Harper testified that, at the conclusion of the chase, the driver left the car
and went over a barbed wire fence into a field off to the left.  He identified
the driver of the vehicle as Larry Dale Smith and the passengers as Clayton
Seale and Joshua Smith, the son of Larry Dale Smith.  Lieutenant Harper
revealed that, when Seale was searched, officers found a spiral notebook with Ainteresting@ writings.  He said the
notebook contained a number of measurements, which he recognized as portions. 
He indicated that it also contained items descriptive of terms used in drug manufacturing
or drug use.








Lieutenant
Harper testified that from ADeputy
Varner@ he received a
Crown Royal bag that held a set of electronic scales and two photographs.  He
related that, after meeting Officer Keith of the Brownwood Police Department at
the rock area just behind the containment wall near the intersection of Vine
and Washington Streets, Officer Keith found a Carmex container for lip balm
containing a substance he believed to be methamphetamine, based upon his
training and experience. 

On
recross-examination, Lieutenant Harper testified that, while Smith did not own
the vehicle in question, as the driver, he was in control of it.  He
acknowledged that the statements that he took from Seale and Smith=s son were inconsistent, so
that one of them was lying.

Bruce
Spruill testified that he is a police officer with the City of Brownwood,
working as a detective assigned to narcotics.  He identified a Carmex jar
containing methamphetamine.  He said he placed it in a plastic bag, along with
his initials and the date he placed it in the bag.  He acknowledged that he was
unable to obtain a fingerprint from the Carmex jar.  Detective Spruill
indicated that a person=s
knowledge and familiarity with the person=s
background, particularly as it might pertain to drugs, is important in
determining knowledge of what might be possessed.  He said that whether one is
under the influence of drugs is another factor in making that determination.

David
Varner testified that he is a patrol officer with the Brown County Sheriff=s Department.  He indicated
that he assisted in the pursuit of the vehicle involved in this case.  He
related that he used a detector dog, Izzy, and that he had been trained in
handling such dogs.  He stated that the dog had been trained to detect
methamphetamine, heroin, cocaine, and marihuana.  He said that Izzy was an
aggressive alerter, which means that, if she smelled the odor of narcotics, she
would bark, bite, and scratch to try to get to the odor to let one know where
it was.  Deputy Varner testified that Izzy aggressively alerted to the
driver=s seat and
glove box of the vehicle involved in this case.  Deputy Varner acknowledged
that he was not able to find any actual substance in the area of the driver=s seat.  He stated that
Deputy Pete Bastardo located a Crown Royal bag in the glove compartment, which
contained a set of digital scales.  He indicated there was a white powdery
residue on the scales.  He identified State=s
Exhibits 14-A, 14-A-1, 14-A-2, and 14-A-3 as the bag and its contents.  He
later acknowledged that he had no reason to believe that Smith used the vehicle
often.  He also acknowledged that he had no way of knowing when any controlled
substance would have been located on the driver=s
seat.








Clayton
Wayne Seale testified that he was serving a fifteen-year sentence in the state
penitentiary for possession of a controlled substance.  He admitted to having
possessed, sold, and manufactured drugs.  He said that he knew Smith and that
he would go over to Smith=s
house and do drugs.  He indicated that Smith knew he had drugs for sale from
time to time.  He related that Smith made it possible for him to sell drugs by
introducing him to people he did not know who wanted to buy drugs.

Seale
testified that on the morning of December 17, 2006, he and his uncle left his
place and went to Brownwood where Seale was going shopping for Sudafed pills,
the base component in the manufacture of methamphetamine.  He said the car they
went in belonged to his grandpa.  He indicated that he went to Smith=s house, taking with him a
tackle box containing scales, syringes, drugs, and Awhatnot.@

Seale
testified that he and Smith were going to go look at a pickup that was for
sale.  He indicated that he and Smith used methamphetamine before leaving the
apartment.  He said that Smith was driving when a police officer attempted to
stop him.  He related that Smith said he had a warrant and did not want to go
back to prison.

Seale
testified that, as they attempted to elude the police, he threw drugs out the
window.  He said that, during the chase, Smith pulled out a syringe loaded with
drugs and tried to inject himself with it.  He indicated that he persuaded
Smith not to do that but that Smith squirted the drugs in his mouth instead. 
He stated that Smith threw the syringe out the driver=s side window after squirting its contents
into his mouth.  Seale testified that he did not believe Smith ever threw
anything out the passenger=s
side window.

Seale
identified State=s
Exhibit 13-A as a Carmex container that belonged to him.  He said it was one of
the objects he threw from the car.  He acknowledged that it contained
methamphetamine.  He stated that it probably contained about three or four
grams.  He acknowledged that he had possession of a lot of drugs that day.

Seale
testified that he had loaned the scales found in the Crown Royal bag to his
uncle.  He said that he did not put the scales in the Crown Royal bag.  He
identified a notebook as one containing his drug writings.  He indicated that
he got the notebook back from Smith, who had it for a period of time.  On
cross-examination, Seale acknowledged that, even if Smith might have suspected
that he possessed drugs at the time of the chase, he would not have known about
the drugs in the Carmex container because they did not come out until after the
chase was underway.  He also acknowledged that he had no reason to believe that
Smith had used his notebook with the drug writings for anything or that Smith
even knew that it had been at his house.  On redirect examination, Seale
testified that earlier in the day there was no doubt that Smith knew Seale had
drugs.








Joshua
Smith, son of Larry Dale Smith, testified that he had used methamphetamine
since he was fifteen.  He said that he remembered Seale throwing something out
the window during the chase but that he did not recall what it was.  He
recalled that once or twice he heard his father say something about, AYou ain=t got nothing on you, you
better make sure you got everything off of you if you do.@  While he said he never
heard his father tell Seale to get rid of all of his drugs, he indicated that
it was pretty clear that he was saying he wanted Seale to get rid of drugs that
he had on him.  He recalled that he saw Seale move a Crown Royal bag from the
floorboard to the glove box.  Joshua insisted that it was he, not his father,
who threw a syringe filled with methamphetamine out the window during the
chase.  He said he did not have any reason to believe that his father would
have known there were any particular drugs in the car at that time.  He said
his father told Seale, AIf
you have anything, get rid of it.@

Sam
Moss testified that he is an assistant district attorney for the 35th
District.  He indicated that, contrary to his testimony at trial, Joshua had
told him and Micheal Murray, the District Attorney, that he, his father, and
Seale had all used drugs together.  He related that Joshua told them the drugs
came from Seale=s
tackle box.  Moss also related that, contrary to his testimony at trial, Joshua
had said that his father was really messed up, had been up for seven days, and
was Ajust wired.@  Moss said he also
recalled that Joshua had said that his father was saying to Seale during the
chase, AHey, have you
got rid of everything?  Did you get rid of all of the stuff?@  He indicated that Joshua,
during their interview, said he never saw anything get thrown from the car.  He
related that Joshua had specifically denied he had been in possession of
anything.

In
a written statement, Seale said that he believed that Smith had thrown the
Carmex jar out the window and that Smith had also thrown a freezer bag out of
the car.  He indicated that he was unaware of the illegal substances possessed
by Smith during the pursuit.  He also insisted that he had Apilfered@ the drug notebook from
Smith.  We hold that the evidence is legally and factually sufficient to
support the conviction.

As
we have noted, Seale, in his original statement to the police, indicated that
it was Smith, not he, who possessed the drug in question in this case.  While
Smith places great emphasis on Seale=s
recanting of that original statement, the jury was not required to accept the
recanted version.  Smith=s
statement constitutes direct evidence that Smith was in possession of the drugs
alleged.  It linked Smith to those drugs and showed more than his mere presence
or proximity to them.








We
would also note that the charge authorized Smith=s
conviction as a party, so that if it were Seale, not Smith, who possessed the
methamphetamine, there was evidence that Smith aided him with respect to that
possession by attempting to evade capture by the police and by urging him to
get rid of the drugs during the police chase.  While there was evidence that
Smith was evading the police due to an outstanding warrant, the jury could have
reasonably inferred from the evidence that he was doing so because of the drugs
that were in the vehicle.  








Smith
argues under these points that the accomplice witness evidence is
insufficiently corroborated as required by Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  However, uncorroborated
accomplice witness testimony can be sufficient to support a conviction under
legal and factual sufficiency standards.  Barnes v. State, 62 S.W.3d
288, 300 (Tex. App.CAustin
2001, pet. ref=d). 
Nevertheless, under state statutory law, if the prosecution fails to produce
non-accomplice testimony tending to connect the defendant with the commission
of the offense charged, then the accused is entitled to an acquittal on
appeal.  Id.  The test as to the sufficiency of corroboration of the
accomplice witness is to eliminate from consideration the evidence of the
accomplice witness and then to examine the evidence of the non-accomplice
witnesses with the view to ascertain if there be evidence of an incriminating
character that tends to connect the defendant with the commission of the
offense.  Id.  It is not necessary that the corroborating evidence
directly connect the defendant to the crime or that it be sufficient by itself
to establish guilt.  Id. at 300-01.    Lieutenant Harper
testified that, after the arrest, Smith was sweaty and his hair very
disheveled.  He said that, when he tried to speak to him, all he got was what
he referred to as Aa
thousand-yard stare.@ 
He indicated that, based upon his experience and the absence of the smell of
alcohol, he was of the opinion that Smith was under the influence of an
intoxicating substance other than alcohol.  Lieutenant Harper also recalled
that Smith=s
appearance had changed dramatically from when he had known him previously.  He
specifically referred to the wild disheveled look of Smith=s hair and the fact that he
was a lot slimmer.  He said that he had seen similar changes in appearance
among methamphetamine users because methamphetamine use causes a dramatic
weight loss.  In our opinion, the evidence indicating that Smith was using
methamphetamine and his effort to evade police constitute evidence tending to
connect Smith with the commission of the offense.  Smith contends that the
evidence is insufficient to show that he voluntarily possessed the drug in
question, but the evidence of his methamphetamine use and the evidence that he
possessed the Carmex jar containing the drugs are sufficient to show that he
possessed the drug voluntarily.  We overrule Points One, Two, Three, and Four.

Smith
asserts in Point Five that the trial court erred in failing to instruct the
jury that, if he knowingly possessed the methamphetamine, such possession must
have been voluntary before it could find him guilty.  Smith was charged with
knowingly possessing methamphetamine.  The court=s
charge defined Apossession@ and then stated, APossession is a voluntary
act if the possessor knowingly obtains or receives the thing possessed or is
aware of his control of the thing for a sufficient time to permit him to
terminate his control.@ 
In the application paragraph of the court=s
charge, the court required the jury to find that Smith knowingly possessed a
controlled substance but made no reference to a requirement that his possession
must be voluntary.  Smith made no request for such an instruction as part of
the application paragraph, nor did he make any objection to its omission. 
There is no evidence in the record that, if he possessed the methamphetamine
personally, he did so involuntarily, nor that, if he assisted others in the
possession of the methamphetamine, he did so involuntarily.  Inasmuch as the
issue of voluntariness was not raised by the evidence, there was no error in
failing to include it in the charge.

Smith
contends that the issue of voluntariness was raised by evidence that Seale
testified that Smith knew nothing about the drugs that he had in his possession
until the chase was underway and that Smith then asked him to get rid of them. 
As outlined in the State=s
argument, the State was basing its case either on Smith=s personal possession of the methamphetamine
in the Carmex jar or on the basis that he was aiding Seale in Seale=s possession of the
methamphetamine in the Carmex jar.  Smith=s
contention that the issue of voluntariness was raised is based on the
assumption that the State was seeking to convict him for possessing the
methamphetamine possessed by Seale, other than as a party.  Because the State
was not seeking to convict Smith directly for the possession of methamphetamine
that was solely in the possession of Seale, if there were any error in the
charge for failing to include an instruction on voluntary possession in the
application portion of the charge, the error did not cause egregious harm.  We
overrule Point Five.








Smith
contends in Point Six that the trial court erred in authorizing the jury to
convict him under the law of parties because the evidence did not support it. 
We have previously noted that there was evidence to support Smith=s conviction under the law
of parties, noting evidence that he aided Seale in his possession of the
methamphetamine by evading the police and instructing Seale to get rid of the
drugs during the police chase.  Smith correctly notes that there was evidence that
he was evading police because of an outstanding warrant; however, under the
evidence, a reasonable jury could conclude that he was also doing so in an
effort either to get rid of the drugs in his possession or to allow the others
in possession to get rid of theirs.  He also suggests that his evasion of the
police was not conduct that aided Seale in his possession of the drugs, relying
on Scott v. State, 946 S.W.2d 166, 168 (Tex. App.CAustin 1997, pet. ref=d).  We find Scott to be
distinguishable.  In Scott, evidence showed that Scott was the driver of
the getaway car after a robbery committed by some of his companions.  Id.
at 168-69.  The court=s
charge required that the jury, in order to convict Scott, must find beyond a
reasonable doubt that Scott entered into an agreement and conspiracy with his
codefendants to commit the offense of robbery; that one or more of the
codefendants committed the robbery; that, after the codefendants committed the
robbery, Scott, pursuant to the agreement, aided as a party by driving the
getaway car; and that such offense was committed in the furtherance of the
unlawful purpose to commit robbery.  Id. at 167.  The court reversed
Scott=s conviction
because it concluded that the evidence was insufficient to show that, before
Scott=s codefendants
committed the robbery, Scott entered into a conspiracy and agreed to become a
party to aid in the robbery by driving the getaway car.  Id. at 170.  In
the case at bar, the State was not required to show that Smith entered into a
conspiracy in which he agreed to become a party to aid in the possession of
drugs by driving to evade police.

Smith
also places some reliance on the court=s
opinion in Pesina v. State, 949 S.W.2d 374 (Tex. App.CSan Antonio 1997, no
pet.).  We also find that opinion to be distinguishable.  In Pesina, the
defendant was convicted of murder as a party for actions that he took after the
murder had been completed.  The court reversed his conviction, holding that one=s acts committed after the
offense is completed cannot make him a party to the offense.  Id. at
384.  In the case at bar, any action taken by Smith to assist Seale in the
possession of methamphetamine was taken while Seale was in possession of the
methamphetamine, not when he was no longer in possession of it.  We overrule
Point Six.








Smith
insists in Points Seven, Eight, and Nine that the trial court=s charge violated his right
to a unanimous jury verdict under Article V, section 13 of the Texas
Constitution and under the provisions of the Texas Code of Criminal Procedure
and authorized the jury to convict him without being convinced beyond a
reasonable doubt that he committed every element of the offense.  The charge
instructed the jury that, if it found beyond a reasonable doubt that Smith was
guilty of either possession of a controlled substance with intent to deliver or
possession of a controlled substance in an amount of one gram or more but less
than four grams, it must resolve the doubt in the defendant=s favor and find him guilty
of the lesser included offense of possession of a controlled substance in an
amount of one gram or more but less than four grams.  In suggesting that this
portion authorized the conviction for an offense without the jury being
unanimous, he overlooks the fact that, if the jury is undecided as noted in
this section it is, of necessity, unanimous in its belief that Smith has
committed the essential elements of the offense of possession of a controlled
substance in the amount of one gram or more but less than four grams.  In other
words, although the jury might have been undecided as to whether Smith had the
intent to deliver, the jury was unanimous that he had committed the essential
elements of, and was therefore guilty of, the offense of possession of a
controlled substance in an amount of one gram or more but less than four
grams.  Again, because under the court=s
charge, the jury, in order to convict Smith of the offense of possession of a
controlled substance in the amount of one gram or more but less than four
grams, would have had to be in agreement beyond a reasonable doubt that Smith
had committed the essential elements of the offense of possession, his claim
that substantive due process would prevent his conviction because the State was
required to prove that he committed every element of the offense for which he
was convicted must fail.  We overrule Points Seven, Eight, and Nine.  

The
judgment is affirmed.

 

PER CURIAM

 

November 5, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.