**Opinion filed November 5, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00359-CR

_____

**LARRY DALE SMITH, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19032**

### MEMORANDUM OPINION

Larry Dale Smith appeals his conviction by a jury for the offense of possession of methamphetamine in an amount of one gram or more but less than four grams. The jury, having found the allegations contained in an enhancement paragraph to be true, assessed his punishment at twenty years confinement in the Texas Department of Criminal Justice, Institutional Division. Smith contends in nine points on appeal that the evidence is legally and factually insufficient to support his conviction (Points One, Two, Three, and Four); that the trial court erred in failing to instruct the jury that, if he knowingly possessed the methamphetamine, such possession must have been voluntary before it could find appellant guilty (Point Five); that the trial court erred by authorizing the jury to convict him under the law of parties (Point Six); that the trial court's charge violated his right to a unanimous jury verdict under Article V, section 13 of the Texas Constitution and under the provisions of the Texas Code of Criminal Procedure (Points Seven and Eight); and that the trial

court's charge authorized the jury to convict him without being convinced beyond a reasonable doubt that he committed every element of the offense for which he was convicted (Point Nine). We affirm.

Smith contends in Points One, Two, Three, and Four that the evidence is legally and factually insufficient to support his conviction. In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

Lieutenant John C. Harper of the Brownwood Police Department testified that he sought to stop a car with a driver and two passengers for a minor traffic violation but that the driver did not stop when he sought to pull over the vehicle. He said that, during his chase of the vehicle, just after the vehicle had made a left turn onto Washington, he saw something white thrown from the right front window of the vehicle. He indicated that it went onto the embankment there. He stated that he requested Officer Bryan Keith to secure the area until a search for the object could be conducted.

Lieutenant Harper testified that, at the conclusion of the chase, the driver left the car and went over a barbed wire fence into a field off to the left. He identified the driver of the vehicle as Larry Dale Smith and the passengers as Clayton Seale and Joshua Smith, the son of Larry Dale Smith. Lieutenant Harper revealed that, when Seale was searched, officers found a spiral notebook with "interesting" writings. He said the notebook contained a number of measurements, which he recognized as portions. He indicated that it also contained items descriptive of terms used in drug manufacturing or drug use.

Lieutenant Harper testified that from "Deputy Varner" he received a Crown Royal bag that held a set of electronic scales and two photographs. He related that, after meeting Officer Keith of the Brownwood Police Department at the rock area just behind the containment wall near the

2

intersection of Vine and Washington Streets, Officer Keith found a Carmex container for lip balm containing a substance he believed to be methamphetamine, based upon his training and experience.

On recross-examination, Lieutenant Harper testified that, while Smith did not own the vehicle in question, as the driver, he was in control of it. He acknowledged that the statements that he took from Seale and Smith's son were inconsistent, so that one of them was lying.

Bruce Spruill testified that he is a police officer with the City of Brownwood, working as a detective assigned to narcotics. He identified a Carmex jar containing methamphetamine. He said he placed it in a plastic bag, along with his initials and the date he placed it in the bag. He acknowledged that he was unable to obtain a fingerprint from the Carmex jar. Detective Spruill indicated that a person's knowledge and familiarity with the person's background, particularly as it might pertain to drugs, is important in determining knowledge of what might be possessed. He said that whether one is under the influence of drugs is another factor in making that determination.

David Varner testified that he is a patrol officer with the Brown County Sheriff's Department. He indicated that he assisted in the pursuit of the vehicle involved in this case. He related that he used a detector dog, Izzy, and that he had been trained in handling such dogs. He stated that the dog had been trained to detect methamphetamine, heroin, cocaine, and marihuana. He said that Izzy was an aggressive alerter, which means that, if she smelled the odor of narcotics, she would bark, bite, and scratch to try to get to the odor to let one know where it was. Deputy Varner testified that Izzy aggressively alerted to the driver's seat and glove box of the vehicle involved in this case. Deputy Varner acknowledged that he was not able to find any actual substance in the area of the driver's seat. He stated that Deputy Pete Bastardo located a Crown Royal bag in the glove compartment, which contained a set of digital scales. He indicated there was a white powdery residue on the scales. He identified State's Exhibits 14-A, 14-A-1, 14-A-2, and 14-A-3 as the bag and its contents. He later acknowledged that he had no reason to believe that Smith used the vehicle often. He also acknowledged that he had no way of knowing when any controlled substance would have been located on the driver's seat.

Clayton Wayne Seale testified that he was serving a fifteen-year sentence in the state penitentiary for possession of a controlled substance. He admitted to having possessed, sold, and manufactured drugs. He said that he knew Smith and that he would go over to Smith's house and do drugs. He indicated that Smith knew he had drugs for sale from time to time. He related that

Smith made it possible for him to sell drugs by introducing him to people he did not know who wanted to buy drugs.

Seale testified that on the morning of December 17, 2006, he and his uncle left his place and went to Brownwood where Seale was going shopping for Sudafed pills, the base component in the manufacture of methamphetamine. He said the car they went in belonged to his grandpa. He indicated that he went to Smith's house, taking with him a tackle box containing scales, syringes, drugs, and "whatnot."

Seale testified that he and Smith were going to go look at a pickup that was for sale. He indicated that he and Smith used methamphetamine before leaving the apartment. He said that Smith was driving when a police officer attempted to stop him. He related that Smith said he had a warrant and did not want to go back to prison.

Seale testified that, as they attempted to elude the police, he threw drugs out the window. He said that, during the chase, Smith pulled out a syringe loaded with drugs and tried to inject himself with it. He indicated that he persuaded Smith not to do that but that Smith squirted the drugs in his mouth instead. He stated that Smith threw the syringe out the driver's side window after squirting its contents into his mouth. Seale testified that he did not believe Smith ever threw anything out the passenger's side window.

Seale identified State's Exhibit 13-A as a Carmex container that belonged to him. He said it was one of the objects he threw from the car. He acknowledged that it contained methamphetamine. He stated that it probably contained about three or four grams. He acknowledged that he had possession of a lot of drugs that day.

Seale testified that he had loaned the scales found in the Crown Royal bag to his uncle. He said that he did not put the scales in the Crown Royal bag. He identified a notebook as one containing his drug writings. He indicated that he got the notebook back from Smith, who had it for a period of time. On cross-examination, Seale acknowledged that, even if Smith might have suspected that he possessed drugs at the time of the chase, he would not have known about the drugs in the Carmex container because they did not come out until after the chase was underway. He also acknowledged that he had no reason to believe that Smith had used his notebook with the drug writings for anything or that Smith even knew that it had been at his house. On redirect examination, Seale testified that earlier in the day there was no doubt that Smith knew Seale had drugs.

4

Joshua Smith, son of Larry Dale Smith, testified that he had used methamphetamine since he was fifteen. He said that he remembered Seale throwing something out the window during the chase but that he did not recall what it was. He recalled that once or twice he heard his father say something about, "You ain't got nothing on you, you better make sure you got everything off of you if you do." While he said he never heard his father tell Seale to get rid of all of his drugs, he indicated that it was pretty clear that he was saying he wanted Seale to get rid of drugs that he had on him. He recalled that he saw Seale move a Crown Royal bag from the floorboard to the glove box. Joshua insisted that it was he, not his father, who threw a syringe filled with methamphetamine out the window during the chase. He said he did not have any reason to believe that his father would have known there were any particular drugs in the car at that time. He said his father told Seale, "If you have anything, get rid of it."

Sam Moss testified that he is an assistant district attorney for the 35th District. He indicated that, contrary to his testimony at trial, Joshua had told him and Micheal Murray, the District Attorney, that he, his father, and Seale had all used drugs together. He related that Joshua told them the drugs came from Seale's tackle box. Moss also related that, contrary to his testimony at trial, Joshua had said that his father was really messed up, had been up for seven days, and was "just wired." Moss said he also recalled that Joshua had said that his father was saying to Seale during the chase, "Hey, have you got rid of everything? Did you get rid of all of the stuff?" He indicated that Joshua, during their interview, said he never saw anything get thrown from the car. He related that Joshua had specifically denied he had been in possession of anything.

In a written statement, Seale said that he believed that Smith had thrown the Carmex jar out the window and that Smith had also thrown a freezer bag out of the car. He indicated that he was unaware of the illegal substances possessed by Smith during the pursuit. He also insisted that he had "pilfered" the drug notebook from Smith. We hold that the evidence is legally and factually sufficient to support the conviction.

As we have noted, Seale, in his original statement to the police, indicated that it was Smith, not he, who possessed the drug in question in this case. While Smith places great emphasis on Seale's recanting of that original statement, the jury was not required to accept the recanted version. Smith's statement constitutes direct evidence that Smith was in possession of the drugs alleged. It linked Smith to those drugs and showed more than his mere presence or proximity to them.

We would also note that the charge authorized Smith's conviction as a party, so that if it were Seale, not Smith, who possessed the methamphetamine, there was evidence that Smith aided him with respect to that possession by attempting to evade capture by the police and by urging him to get rid of the drugs during the police chase. While there was evidence that Smith was evading the police due to an outstanding warrant, the jury could have reasonably inferred from the evidence that he was doing so because of the drugs that were in the vehicle.

Smith argues under these points that the accomplice witness evidence is insufficiently corroborated as required by Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). However, uncorroborated accomplice witness testimony can be sufficient to support a conviction under legal and factual sufficiency standards. *Barnes v. State*, 62 S.W.3d 288, 300 (Tex. App.—Austin 2001, pet. ref'd). Nevertheless, under state statutory law, if the prosecution fails to produce non-accomplice testimony tending to connect the defendant with the commission of the offense charged, then the accused is entitled to an acquittal on appeal. *Id*. The test as to the sufficiency of corroboration of the accomplice witness is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of the non-accomplice witnesses with the view to ascertain if there be evidence of an incriminating character that tends to connect the defendant with the commission of the offense. *Id.* It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt. *Id.* at 300-01.

Lieutenant Harper testified that, after the arrest, Smith was sweaty and his hair very disheveled. He said that, when he tried to speak to him, all he got was what he referred to as "a thousand-yard stare." He indicated that, based upon his experience and the absence of the smell of alcohol, he was of the opinion that Smith was under the influence of an intoxicating substance other than alcohol. Lieutenant Harper also recalled that Smith's appearance had changed dramatically from when he had known him previously. He specifically referred to the wild disheveled look of Smith's hair and the fact that he was a lot slimmer. He said that he had seen similar changes in appearance among methamphetamine users because methamphetamine use causes a dramatic weight loss. In our opinion, the evidence indicating that Smith was using methamphetamine and his effort to evade police constitute evidence tending to connect Smith with the commission of the offense. Smith contends that the evidence is insufficient to show that he voluntarily possessed the drug in question, but the evidence of his methamphetamine use and the evidence that he possessed the

6

Carmex jar containing the drugs are sufficient to show that he possessed the drug voluntarily. We overrule Points One, Two, Three, and Four.

Smith asserts in Point Five that the trial court erred in failing to instruct the jury that, if he knowingly possessed the methamphetamine, such possession must have been voluntary before it could find him guilty. Smith was charged with knowingly possessing methamphetamine. The court's charge defined "possession" and then stated, "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." In the application paragraph of the court's charge, the court required the jury to find that Smith knowingly possessed a controlled substance but made no reference to a requirement that his possession must be voluntary. Smith made no request for such an instruction as part of the application paragraph, nor did he make any objection to its omission. There is no evidence in the record that, if he possessed the methamphetamine personally, he did so involuntarily, nor that, if he assisted others in the possession of the methamphetamine, he did so involuntarily. Inasmuch as the issue of voluntariness was not raised by the evidence, there was no error in failing to include it in the charge.

Smith contends that the issue of voluntariness was raised by evidence that Seale testified that Smith knew nothing about the drugs that he had in his possession until the chase was underway and that Smith then asked him to get rid of them. As outlined in the State's argument, the State was basing its case either on Smith's personal possession of the methamphetamine in the Carmex jar or on the basis that he was aiding Seale in Seale's possession of the methamphetamine in the Carmex jar. Smith's contention that the issue of voluntariness was raised is based on the assumption that the State was seeking to convict him for possessing the methamphetamine possessed by Seale, other than as a party. Because the State was not seeking to convict Smith directly for the possession of methamphetamine that was solely in the possession of Seale, if there were any error in the charge for failing to include an instruction on voluntary possession in the application portion of the charge, the error did not cause egregious harm. We overrule Point Five.

Smith contends in Point Six that the trial court erred in authorizing the jury to convict him under the law of parties because the evidence did not support it. We have previously noted that there was evidence to support Smith's conviction under the law of parties, noting evidence that he aided Seale in his possession of the methamphetamine by evading the police and instructing Seale to get rid of the drugs during the police chase. Smith correctly notes that there was evidence that he was

7

evading police because of an outstanding warrant; however, under the evidence, a reasonable jury could conclude that he was also doing so in an effort either to get rid of the drugs in his possession or to allow the others in possession to get rid of theirs. He also suggests that his evasion of the police was not conduct that aided Seale in his possession of the drugs, relying on *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref'd). We find *Scott* to be distinguishable. In *Scott*, evidence showed that Scott was the driver of the getaway car after a robbery committed by some of his companions. *Id*. at 168-69. The court's charge required that the jury, in order to convict Scott, must find beyond a reasonable doubt that Scott entered into an agreement and conspiracy with his codefendants to commit the offense of robbery; that one or more of the codefendants committed the robbery; that, after the codefendants committed the robbery, Scott, pursuant to the agreement, aided as a party by driving the getaway car; and that such offense was committed in the furtherance of the unlawful purpose to commit robbery. *Id.* at 167. The court reversed Scott's conviction because it concluded that the evidence was insufficient to show that, before Scott's codefendants committed the robbery, Scott entered into a conspiracy and agreed to become a party to aid in the robbery by driving the getaway car. *Id.* at 170. In the case at bar, the State was not required to show that Smith entered into a conspiracy in which he agreed to become a party to aid in the possession of drugs by driving to evade police.

Smith also places some reliance on the court's opinion in *Pesina v. State*, 949 S.W.2d 374 (Tex. App.—San Antonio 1997, no pet.). We also find that opinion to be distinguishable. In *Pesina*, the defendant was convicted of murder as a party for actions that he took after the murder had been completed. The court reversed his conviction, holding that one's acts committed after the offense is completed cannot make him a party to the offense. *Id.* at 384. In the case at bar, any action taken by Smith to assist Seale in the possession of methamphetamine was taken while Seale was in possession of the methamphetamine, not when he was no longer in possession of it. We overrule Point Six.

Smith insists in Points Seven, Eight, and Nine that the trial court's charge violated his right to a unanimous jury verdict under Article V, section 13 of the Texas Constitution and under the provisions of the Texas Code of Criminal Procedure and authorized the jury to convict him without being convinced beyond a reasonable doubt that he committed every element of the offense. The charge instructed the jury that, if it found beyond a reasonable doubt that Smith was guilty of either possession of a controlled substance with intent to deliver or possession of a controlled substance

8

in an amount of one gram or more but less than four grams, it must resolve the doubt in the defendant's favor and find him guilty of the lesser included offense of possession of a controlled substance in an amount of one gram or more but less than four grams. In suggesting that this portion authorized the conviction for an offense without the jury being unanimous, he overlooks the fact that, if the jury is undecided as noted in this section it is, of necessity, unanimous in its belief that Smith has committed the essential elements of the offense of possession of a controlled substance in the amount of one gram or more but less than four grams. In other words, although the jury might have been undecided as to whether Smith had the intent to deliver, the jury was unanimous that he had committed the essential elements of, and was therefore guilty of, the offense of possession of a controlled substance in an amount of one gram or more but less than four grams. Again, because under the court's charge, the jury, in order to convict Smith of the offense of possession of a controlled substance in the amount of one gram or more but less than four grams, would have had to be in agreement beyond a reasonable doubt that Smith had committed the essential elements of the offense of possession, his claim that substantive due process would prevent his conviction because the State was required to prove that he committed every element of the offense for which he was convicted must fail. We overrule Points Seven, Eight, and Nine.

The judgment is affirmed.

PER CURIAM

November 5, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.