**Opinion issued December 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00963-CR

———————————

**COURTNEY TYRON BRYANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1396287**

---

## MEMORANDUM OPINION

A jury convicted Courtney Tyron Bryant of possession of a controlled substance with intent to deliver. *See* TEX. PENAL CODE § 481.112. The trial court found that a deadly weapon was used in the offense and assessed punishment at 45 years of imprisonment. Bryant appealed, asserting six issues: (1) there was

insufficient evidence to corroborate the confidential informant's testimony at trial; (2) the trial court erred by failing to instruct the jury on corroboration; (3) the court erred by denying a requested instruction on mere presence; (4) the court erred by denying a new trial; (5) the court erred by admitting text messages in violation of his Sixth Amendment right to confrontation; and (6) there was insufficient evidence to support the trial court's finding of use of a deadly weapon.

Finding no reversible error, we affirm.

## Background

Officer Pat Esquibel, a specialist in mid-level drug investigations, worked with Eloy Trejo, a confidential informant who agreed to help the police in exchange for a dismissal of charges for possession of heroin. Trejo informed Officer Esquibel that a Mexican national was attempting to sell several kilograms of cocaine, and that he also knew about a potential buyer, Jahson "J-Money" Hicks. Trejo facilitated a transaction between the two parties, and the police set up surveillance at the apartment complex where the deal was set to occur. Trejo was not wired for sound or video, and there was no way to directly hear or observe what occurred within the apartment during the deal.

Police observed two men, Hicks and appellant Courtney Tyron Bryant, exit a black Jeep. Trejo joined Hicks and Bryant, and all three entered the apartment complex. Trejo testified that the Mexican seller arrived with two kilos of cocaine.

According to Trejo, Bryant tested the cocaine by cutting the wrapping, taking a sample, and "cooking" it with baking soda. Trejo left briefly twice during this process to retrieve supplies that Bryant requested to complete the tests.

While the tests were ongoing, Hicks and Bryant were texting one another about the deal, and the police subsequently downloaded the following messages from Hicks's phone:

> Hicks:     U want me too take this s—???
>
> Bryant:    Yes we would
>
> Hicks:     Wht u want me to do??

Bryant did not respond. After Bryant completed his tests and said that the cocaine was good, Hicks pulled out a gun and grabbed the two packages of contraband. Trejo testified that Bryant looked surprised at this and exclaimed "What the f— are you doing?"

Bryant pushed Hicks out of the apartment. Police observed the two "running out," with one holding a brown paper bag, before they fled in the Jeep. Officer Esquibel dispatched squad cars to follow the vehicle, and eventually he pulled it over on a service road near a wooded area. Hicks jumped out of the passenger seat with a bag in his hand and ran into the woods. Bryant, who was driving the vehicle, sped up after Hicks exited and eventually came to a stop roughly 20 feet further down the road. The arresting officers noted that this usually happens when a

3

getaway driver is trying to give a coconspirator time to run away. The police eventually recovered a brown package filled with two kilos of cocaine in the woods nearby. They also recovered Hicks's mobile phone and some of his personal possessions, but they did not find either Hicks or the gun.

At trial, the State relied exclusively on Trejo's testimony to describe what occurred in the apartment. Bryant repeatedly challenged Trejo's credibility, arguing that his agreement with the State, his past drug use, and the fact that he was not recorded during the transaction were all reasons that his testimony should not be trusted.

The State submitted into evidence both Hicks's and Bryant's mobile phones and the messages that were downloaded from them. Bryant objected to the admission of the messages on the bases of hearsay and the Confrontation Clause. The trial court overruled Bryant's objection. The State introduced further evidence that Bryant had deleted Hicks's messages from his phone, and these were the only texts he had deleted.

The court's charge to the jury on guilt and innocence contained the following language regarding Bryant's presence at the scene of the crime: "Mere presence alone at the scene of a crime and knowledge of the guilty intent of the parties present will not constitute one a party to an offense." Bryant objected and requested an addition that mere presence alone "or assisting a primary actor in

4

making his getaway will not constitute one" a party to the offense. The court declined to add the requested instruction. The jury charge did not contain an instruction about corroboration of informant testimony. Bryant did not make any further objection to the charge. The jury found Bryant guilty of possession of a controlled substance with intent to deliver.

Bryant elected to have the court assess punishment. He argued that he should not receive an enhanced sentence for using a deadly weapon during the offense because he did not possess the weapon and his surprise during the robbery showed that he did not know Hicks had one. The State responded that the text messages and Bryant's role in the getaway indicated that he knew there would be a weapon involved. The trial court found that Bryant was a party to the offense and to use of a deadly weapon, and it sentenced him to confinement for 45 years. Bryant moved for a new trial, which the court denied. Bryant appealed.

**Analysis**

I. **Sufficiency of corroboration evidence**

Bryant argues that there was insufficient evidence to corroborate Trejo's testimony as required by statute. He asserts that because there was insufficient evidence to corroborate Trejo's testimony, that testimony should have been disregarded, and the trial court should have ordered an acquittal.

The Texas Code of Criminal Procedure provides:

> A defendant may not be convicted of an offense . . . on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. art. 38.141. The Court of Criminal Appeals has held that the appropriate standard for evaluating sufficiency of the evidence for corroboration is the same as that used for accomplice-witnesses. *See id*. art. 38.14; *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Accordingly, "a reviewing court must exclude the testimony of the covert agent from consideration and examine the remaining evidence . . . to determine whether there is evidence that tends to connect the defendant to the commission of the offense." *Malone*, 253 S.W.3d at 258.

The remaining evidence does not, by itself, have to establish the defendant's guilt beyond a reasonable doubt; it merely must connect the defendant with the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007); *Randall v. State*, 218 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Circumstances "that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257. This can include proof "that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances." *Id.* (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)).

6

The remaining evidence was sufficient to corroborate Trejo's testimony in this case. Police observed Hicks and Bryant entering the apartment together, then running out of it with a brown bag. When police pulled Bryant over, Hicks jumped out of the vehicle and carried the bag with him. The bag was later found filled with two kilos of cocaine.

While Bryant argues that without Trejo's evidence there is insufficient proof of the offense as a whole, this is not the correct standard for sufficiency of corroboration. *See Castillo*, 221 S.W.3d at 691. The remaining non-informant evidence may have been insufficient to find Bryant guilty beyond a reasonable doubt, but it did not have to carry that burden; the evidence only needed to connect Bryant with the offense. *See Malone*, 253 S.W.3d at 257. Bryant's presence at the scene, his manner of exiting the apartment, and the fact that he drove the car that enabled Hicks to escape into the woods with the cocaine were suspicious circumstances that tend to connect him to the offense and corroborate Trejo's testimony.

We overrule Bryant's first point of error.

## II.    Jury instruction on corroboration

Bryant asserts that the jury should have received an instruction on the necessity of corroborating Trejo's testimony. While Byrant acknowledges that he did not object on this basis at trial, he claims that the trial judge nevertheless

should have given the instruction on his own initiative, and that the lack of instruction caused Bryant egregious harm that prevented him from having a fair and impartial trial.

We review jury charge error under the standard set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). When error is properly preserved, a reversal is required if "some harm" is shown. *Id.* at 171. Jury charge error that was not preserved by a contemporaneous objection does not require reversal unless it causes "egregious harm" that denies the defendant the right to a fair trial. *Id.*

Whether failure to instruct on the need to corroborate confidential-informant evidence will be deemed harmful is "a function of the strength of the corroborating evidence." *Casanova v. State*, 383 S.W.3d 530, 539 (Tex. Crim. App. 2012). The strength of a particular item of non-informant or non-accomplice evidence is determined by "(1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). "The difference in harm standards impacts how strong the non-accomplice evidence must be for the error in omitting an accomplice witness instruction to be considered harmless." *Id.*

Under the egregious harm standard as applied to accomplice witnesses, the omission of a corroboration instruction is generally harmless unless the corroborating evidence is "so unconvincing in fact as to render the State's overall

case for conviction clearly and significantly less persuasive." *Id.* (quoting *Saunders v. State*, 817 S.W.2d 688, 689 (Tex. Crim. App. 1991)). In *Saunders v. State*, the corroborative evidence was tenuous and was contradicted by the defendant's evidence, leading to a finding of egregious harm from the lack of a corroboration instruction. *See Saunders*, 817 S.W.2d at 692–93.

In this case, in contrast, Bryant presented no evidence that would contradict or undermine the State's corroborating evidence, and logical inference was in favor of connecting Bryant to the crime. As stated above, there was sufficient corroborating evidence to support the confidential informant testimony. We do not find the corroborating evidence so unconvincing that it renders the State's overall case clearly and significantly less persuasive. *See Herron*, 86 S.W.3d at 632. While the trial court should have given an instruction on corroboration of informant testimony, we do not find egregious harm in its failure to do so. Accordingly, we overrule Bryant's second point of error.

## III.    Jury instruction on mere presence

Bryant also alleges that the trial court erred in refusing to add his proposed jury instruction regarding presence at the crime scene, specifically that mere presence alone "or assisting a primary actor in making his getaway will not constitute one" a party to the offense. As Bryant objected and preserved error on

this issue, it requires reversal if the denial of the instruction was error and caused Bryant "some harm." *See Almanza*, 686 S.W.2d at 171.

The purpose of the jury charge is "to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). In determining whether there was reversible error in a jury charge, courts first determine whether there is error present, then look to: "(1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole." *Gelinas v. State*, 398 S.W.3d 703, 705–06 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

In order to show possession of a controlled substance, the State must prove that the accused exercised control, management, or care over the substance, and knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). "Mere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial" can establish possession beyond a reasonable doubt. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2005).

The Court of Criminal Appeals has recognized numerous "affirmative links" as non-exclusive factors that may establish possession, including whether: (1) the defendant was present when a search was conducted; (2) the contraband was in plain view; (3) the defendant was in proximity to and accessible to the contraband; (4) the defendant was under the influence of narcotics when arrested; (5) the defendant possessed other contraband when arrested; (6) the defendant made incriminating statements when arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) there was an odor of contraband; (10) other contraband or drug paraphernalia was present; (11) the defendant owned or had the right to possess the place where the contraband was found; (12) the place where the contraband was found was enclosed; (13) the defendant was found with a large amount of cash; and (14) the conduct of the defendant indicated a consciousness of guilt. *Id*. at 162 n.12.

Bryant largely bases his argument that he should have received his requested instruction on two prior cases from other appellate courts, *Wooden v. State*, 101 S.W.3d 542 (Tex. App.—Fort Worth 2003, pet. ref'd), and *Scott v. State*, 946 S.W.2d 166 (Tex. App.—Austin 1997, pet. ref'd). Both *Wooden* and *Scott* were appeals that challenged the sufficiency of the evidence for conviction as a party to aggravated robbery. *Wooden*, 101 S.W.3d at 545; *Scott*, 946 S.W.2d at 167. In *Scott*, the court of appeals reversed and remanded because the appellant did not

take part in the robbery, but merely drove the participants to and from the scene of the crime without knowledge that it occurred. *Scott*, 946 S.W.2d at 169–70.

The State asserts that because both of these cases challenged the sufficiency of the evidence to sustain convictions rather than incorrect charge language they are inapplicable to the current case. The State further argues that because both *Scott* and *Wooden* were about the offense of robbery rather than possession of a controlled substance, they are inapposite because in this case the offense of possession would have been ongoing during the getaway.

The State's reasoning is persuasive. Bryant's proposed charge language actually would negate several of the "affirmative links" that the Court of Criminal Appeals has recognized as factors that establish possession, including whether he attempted to flee and whether he was in proximity to the contraband. *See Evans*, 202 S.W.3d at 162 n.12. Unlike robbery, in which a getaway driver could not be part of the crime if he was not present during the actual theft, possession continues as long as a defendant has control, care, or custody of the substance. *See id.* at 162. As a result, *Scott*'s and *Wooden*'s language regarding the culpability of a getaway driver is inapplicable.

While the jury charge did not contain Bryant's requested instruction, it did contain an instruction on mere presence: "Mere presence alone at the scene of a crime and knowledge of the guilty intent of the parties present will not constitute

one a party to an offense." This instruction was a correct statement of the law as stated in *Evans v. State*, and the court did not need to include Bryant's requested language in addition to this standard. *See id.* We conclude that there was no error in the "mere presence" portion of the jury charge.

We overrule Bryant's third issue.

## IV.    Motion for new trial

Bryant's argument that his motion for new trial should have been granted is largely dependent on his first three points of error. He asserts that the lack of instruction caused the trial court to misdirect the jury, and that he should have been granted a new trial as a result.

Appellate courts review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). This court must view the evidence in the light most favorable to the trial court's ruling and presume that the trial court made all reasonable factual findings in support of the ruling that are supported by the record. *Id.* A trial court only abuses its discretion in denying a motion for new trial when "no reasonable view of the record could support the trial court's ruling." *Id.*

As stated above, the trial court did not cause egregious harm in its jury charge. Bryant alleges no other reason to reverse the trial court's denial of his

motion, and the record supports the trial court's ruling. Accordingly, we find no abuse of discretion in the trial court's ruling, and overrule Bryant's fourth issue.

## V.    Admission of text messages

Bryant claims that the admission of the text messages on his and Hicks's phones was testimonial hearsay in violation of the Confrontation Clause. He argues that because Hicks did not appear as a witness, it was impossible for him to cross-examine him, and thus admission of his statements was a violation of his constitutional right to confront witnesses.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. This procedural guarantee applies in state prosecutions as well as federal ones. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965); *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). Out-of-court statements offered against the accused that are "testimonial" in nature should be excluded unless the prosecution can show that the out-of-court declarant is unavailable to testify in court and that the accused had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

Whether a statement is testimonial or nontestimonial is a constitutional legal question that is reviewed de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). "Testimonial" statements are typically solemn declarations made for the purpose of establishing some fact. *Russeau*, 171 S.W.3d at 880. This typically occurs "when the surrounding circumstances objectively indicate that the primary purpose of [the communication] is to establish or prove past events potentially relevant to later criminal prosecution." *De La Paz*, 273 S.W.3d at 680. The Sixth Amendment does not bar the use of nontestimonial hearsay. *Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011).

A co-conspirator's statements in furtherance of the conspiracy are generally considered nontestimonial. *See Crawford*, 541 U.S. at 56, 124 S. Ct. at 1367 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or *statements in furtherance of a conspiracy*." (emphasis supplied)). The text messages in this case indicated the formation of a conspiracy and were offered explicitly to show that Bryant and Hicks were coconspirators. Furthermore, the highly informal and frequently misspelled language in the messages, their subject, and the method of communication (by text message) all weigh against finding them to be testimonial statements. *Id.* at 51, 124 S. Ct. at 1364 (noting that testimonial statements are typically "formalized" materials that "were made under circumstances which

15

would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" as opposed to informal text messages).

As the text messages were nontestimonial statements, they were not barred by the Confrontation Clause. *See Sanchez*, 354 S.W.3d at 485. Accordingly, we overrule Bryant's fifth issue.

## VI.  Sufficiency of evidence for deadly weapon enhancement

Finally, Bryant argues that there was insufficient evidence for the trial judge to make an affirmative finding of a deadly weapon. Bryant asserts that there was no evidence that he anticipated that Hicks would produce a pistol or that he assisted Hicks in taking the cocaine after drawing the firearm.

In reviewing a challenge to the sufficiency of the evidence for a conviction, "we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). To hold the evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the same transaction as the felony that was the subject of the conviction; and (3) that other people were put in actual danger. TEX. PENAL CODE § 1.07(a)(17); *Brister v. State*,

449 S.W.3d 490, 494 (Tex. Crim. App. 2014); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

In this case, the evidence was sufficient for a rational trier of fact to make an affirmative finding of a deadly weapon. A firearm is a deadly weapon under the Penal Code. *See* TEX. PENAL CODE § 1.07(a)(17). The factfinder could draw inferences from Bryant's role in the getaway, Trejo's testimony, and the text messages that Bryant and Hicks sent one another that the weapon was used during the possession of the controlled substance. The requirement that other people were placed in actual danger could be inferred from Trejo's testimony that Hicks pointed his gun at the other people in the apartment. Viewing the evidence in the light most favorable to the verdict, we conclude there was sufficient evidence for the trial court to find that a deadly weapon was used in the commission of Bryant's offense. *See Isassi*, 330 S.W.3d at 638; *Drichas*, 175 S.W.3d at 798. We overrule Bryant's sixth issue.

## Conclusion

We affirm the ruling of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).